IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHERYL JAMES                         NO. 3:10-CV-1534
WARREN JAMES
NICOLE JAMES                         JUDGE MUNLEY

           v.                        MAGISTRATE JUDGE METHVIN

CITY OF WILKES-BARRE
WRIGHT TOWNSHIP, PA
WILKES-BARRE POLICE DEPT.
CHARLIE CASEY, Wilkes-Barre Police Officer
WRIGHT TOWNSHIP POLICE DEPT.
DENNIS MONK, Police Officer
BRIAN STOUT, Police Officer
MICHAEL MARSHALL, Police Officer
WILKES-BARRE HOSPITAL CO., L.L.C. d/b/a/
   Wilkes-Barre General Hospital
WYOMING VALLEY HEALTH CARE SYSTEM
DR. RUSSELL JAMES
DR. NOEL ESTIOKO
DR. MAUREEN LICHTMAN
AMY CRAIG, Nurse
BETH ANN NOBLE, Nurse
BRIAN MORAN, Nurse
RYAN SELTZER, Nurse
CAROLE PIROW, Nurse
KATHY VIDUMSKI, Nurse
JASON KILLIAN, Nurse
LAURA PAULUKONIS, physicians assistant
TANYA OSTOPICK, respiratory therapist

## REPORT AND RECOMMENDATION ON MOTIONS TO DISMISS
### (Docs. 63, 67, 90, 97)

Before the court are six motions to dismiss filed in this civil rights case. Four

of the motions are addressed in this report and recommendation:

1.      Doc. 63:      Wright Township, Wright Township Police Department
                       and Officer Michael Marshall[1] ("Wright Twp. movers");

2.      Doc. 67:      City of Wilkes-Barre and Wilkes-Barre Police Department
                       ("Wilkes-Barre movers");

3.      Doc. 90:      Officer Brian Stout;

4.      Doc. 97:      Officer Dennis Monk.

All motions are ripe for disposition.[2]

For the following reasons, it is recommended that the motions be granted.[3]

---

[1] In the complaint, plaintiff sometimes refers to Officer Michael Marshall as "Michael Miller." *See*, e.g., Doc. 1-3, p.21.

[2] The Wright Twp. movers filed their motion on September 30, 2010, with supporting brief (Docs 63, 59, 64). Plaintiffs filed an opposition on October 13, 2010, and movers filed a reply brief on October 18, 2010 (Docs. 74, 76. The reply is docketed as a "brief in support"). The Wilkes-Barre movers filed their motion on October 4, 2010, with supporting brief filed on October 18, 2010 (Docs. 67, 77). Plaintiffs filed an opposition on October 27, 2010 (Doc. 83), and movers filed a reply brief on November 7, 2010 (Doc. 94). Stout filed his motion on November 2, 2010, with supporting brief (Docs. 90, 91). Plaintiffs filed an opposition on November 12, 2010 (Doc. 98). Monk filed his motion on November 12, 2010 (Doc. 97), and thereafter filed a supporting brief on November 22, 2010 (Doc. 105). Plaintiffs filed an opposition on December 2, 2010 (Doc. 106).

[3] On April 8, 2011 Judge Munley referred the pending motions to Magistrate Judge William T. Prince. The motions were subsequently referred to the undersigned Magistrate Judge.

# FINDINGS AND CONCLUSIONS

## I. Background

Plaintiffs are Cheryl and Warren James, and their daughter Nicole James. The following facts, asserted in plaintiffs' complaint, are presumed true for purpose of this analysis.

On September 28, 2009, Nicole James, then fifteen years old, was distraught over a breakup with her boyfriend. At approximately 10:30 p.m., she sent a text message to a friend stating that she planned to commit suicide by ingesting ibuprofen pills. Police were alerted, and at approximately 10:49 p.m., Officer Marshall with the Wright Township Police Department arrived at plaintiffs' home. He was accompanied by emergency medical personnel and two other police officers: Officer Brian Stout of the Rice Police Department and Officer Dennis Monk of the Fairview Police Department.[4] When questioned by her parents, Nicole confirmed she had sent the text message and had planned to commit suicide, but stated that she had decided against it and had not ingested any pills. Plaintiffs believed their daughter, and wished to handle the matter internally, but the officers "informed Warren and Cheryl that [they] would charge Cheryl and Warren with assisted manslaughter if something

---

[4] Plaintiff's complaint erroneously alleged that all three officers were with Wright Township Police Department Police Department, but their correct positions have now been clarified. *See* Doc. 98, p. 2,  Fn.2.

4

happened to Nicole because they did not send Nicole to the hospital with the

emergency medical services personnel." [5] Under these circumstances, the parents

gave permission for their daughter to be taken to the hospital. Officers instructed that

at least one of the parents would need to accompany their daughter to the hospital.

Because they had both taken prescription medication,[6] Cheryl and Warren James felt

unable to travel and informed the officers of this fact. However, due to the insistence

of the officers, Cheryl agreed to go to the hospital with Nicole.

Nicole was transported via ambulance to Wilkes-Barre General Hospital where

she was screened for a drug overdose, the results of which were consistent with the

ingestion of ibuprofen within the acceptable therapeutic range. Cheryl told hospital

personnel that she would take her daughter home and would seek follow-up

counseling the next day. Defendant Kathy Vidumsky led Cheryl to believe that

Nicole would be discharged. Instead, a Section 302 hold[7] was placed on Nicole. As

Cheryl and Nicole walked out of the hospital to take a cab home, hospital security

---

[5] Complaint, ¶ 50, Doc. 1-3.

[6] Cheryl had taken Seroquel, a medication prescribed by her psychiatrist, and had also ingested "some alcoholic drinks."  (Complaint ¶ 43). She alleges the medication left her feeling extremely drowsy. Warren James was taking an unspecified medication for a heart condition which had the same side effect.

[7] Section 302 of the Pennsylvania Mental Health Procedures Act, 50 Pa. Stat. Ann. §7302 authorizes involuntary mental health examinations in certain emergency situations, up to a period of 120 hours.

followed them and told them they should not leave. No reasons were given. Officers with the Wilkes-Barre Police Department then appeared on the scene and forcibly removed Cheryl from the cab. Cheryl was taken back into the hospital where she, too, was placed under a Section 302 hold and forced to undergo a non-consensual medical exam. Blood samples were taken and Cheryl was injected with sedatives. During this time she was restrained on a gurney for approximately four hours. Cheryl was not seen by a physician until later the next afternoon. She was released to her husband at approximately 9 p.m. , almost 24 hours after the initial events.

During the time these events unfolded, Luzerne County Children and Youth Services ("CYS") repeatedly called the James home, awakening Warren James. CYS requested that Warren sign a release committing his daughter to a psychiatric counseling center.  Warren signed and faxed the release to CYS because, he asserts, CYS threatened him with loss of custody of his daughter if he did not comply.[8] When Warren contacted the hospital to locate his wife, the hospital refused to provide him with any information.

The present action followed. Defendants are various police departments, police officers, local government entities, hospitals, physicians, and health care providers. Plaintiffs' claims include assault, battery, false arrest, false imprisonment,

---

[8]  Plaintiffs aver that CYS subsequently closed its file of the matter after an inspection of the James home revealed nothing of concern.

negligent infliction of emotional distress, intentional infliction of emotional distress, negligent misrepresentation, intentional misrepresentation, and claims under 42 U.S.C. §1983. The suit was removed to this court from the Court of Common Pleas of Luzerne County on July 23, 2010.[9]

## II. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims that fail to assert a basis upon which relief can be granted. When considering a motion to dismiss, the court must accept all factual allegations in the complaint as true, viewing them as a whole, and draw all reasonable inferences in the plaintiff's favor. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir.2002)); Matrixx Initiatives, Inc. v. Siracusano, 131 S.Ct. 1309, 1322–23 (2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The question is not whether the plaintiff will ultimately prevail, but whether the "complaint [is] sufficient to cross the federal court's threshold." Skinner v. Switzer,

---

[9] Doc. 1

131 S.Ct. 1289, 1296 (Mar. 7, 2011)(citing Swierkiewicz v. Sorema N. A., 534 U.S.

506, 514 (2002)).

The "plausible grounds" requirement "does not impose a probability

requirement at the pleading stage; it simply calls for enough facts to raise a

reasonable expectation that discovery will reveal evidence" supporting the plaintiff's

claim for relief. Twombly, 550 U.S. at 556. Determining plausibility is "a

context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." Iqbal, 129 S.Ct. at 1950 (citing Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 557-58 (2007)).

Legal conclusions in the complaint receive no deference.

Two working principles underlie our decision in Twombly. First, the
tenet that a court must accept as true all of the allegations contained in a
complaint is inapplicable to legal conclusions. Threadbare recitals of the
elements of a cause of action, supported by mere conclusory statements,
do not suffice.

Iqbal, 129 S. Ct. at 1949.

The court will not dismiss a complaint for failure to state a claim unless it

appears beyond a doubt that "no relief could be granted under any set of facts that

could be proved consistent with the allegations." Swierkiewicz, 534 U.S. at 514

(quoting Hishon v. King & Spalding, 467 U.S. 69, 73, (1984)).

The Third Circuit has outlined a two-part analysis that courts should utilize when deciding a motion to dismiss for failure to state a claim. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir.2009). First, the factual and legal elements of a claim should be separated. In other words, while courts must accept all of the complaint's well-pleaded facts as true, they may disregard any legal conclusions. Second, courts then decide whether the facts alleged in the complaint are sufficient to demonstrate that the plaintiff has a "'plausible claim for relief.'" <u>Id</u>. at 210 (quoting <u>Iqbal</u>, 129 S. Ct. at 1950). That is, a complaint must do more than allege the entitlement to relief, its facts must show such an entitlement. <u>Id</u>. at 211.

## III. Discussion

This court has already entered two Orders of Dismissal based upon plaintiffs' voluntary dismissal of certain claims.[10] Plaintiffs do not oppose dismissal of additional claims, as indicated in their response to the motions to dismiss *sub judice*.[11] As to certain claims, plaintiffs request dismissal without prejudice, pending additional discovery. The chart below outlines the claims, the agreements to dismiss, and orders of dismissal already entered:[12]

---

[10] *See* Docs. 92 and 99.

[11] *See* plaintiffs' opposition briefs, Docs. 74, 83.

[12] Boxes marked with an "X" indicate extant claims against the party in the column heading. Blank boxes indicate that that particular claim was not alleged against the party in the column heading. Claims which plaintiff has agreed to dismiss, or

| COUNTS ADDRESSED IN THIS R&R | Wright Twp. Movers | | Wilkes-Barre City & Police | Officer Stout | Officer Monk |
| --- | --- | --- | --- | --- | --- |
| | City & Police | Off. Marshall | | | |
| Count I - Assault upon Cheryl and Warren James | P: Dismiss w/o prej.(Doc. 74) | P: Dismiss w/o prej.(Doc. 74) | | Doc. 92 - Order of dismissal | Doc. 99 -Order of dismissal |
| Count II - False arrest of Cheryl James | Dismiss w/o prej.(Doc. 74) | X | | X | X |
| Count III - False imprisonment of Cheryl James | Dismiss w/o prej.(Doc. 74) | X | | X | X |
| Count IV - Negligent infliction of emotional distress upon Cheryl James | *P:Dismiss with prej.(Doc. 74)* | *P:Dismiss with prej.(Doc. 74)* | | Doc. 92 - Order of dismissal | Doc. 99 -Order of dismissal |
| Count V - Negligent misrepresentation of the law to Cheryl James | *P:Dismiss with prej.(Doc. 74)* | *P:Dismiss with prej.(Doc. 74)* | | Doc. 92 - Order of dismissal | Doc. 99 -Order of dismissal |
| Count VI - Intentional misrepresentation of the law to Cheryl James | P: Dismiss w/o prej.(Doc. 74) | P: Dismiss w/o prej.(Doc. 74) | | Doc. 92 - Order of dismissal | Doc. 99 -Order of dismissal |
| Count VII - Assault upon Cheryl James | | | *P:Dismiss with prej. (Doc. 83)* | | |
| Count VIII - Battery upon Cheryl James | | | *P:Dismiss with prej. (Doc. 83)* | | |
| Count IX - Intentional infliction of emotional distress upon Cheryl James | | | *P:Dismiss with prej. (Doc. 83)* | | |
| Count X - Negligent infliction of emotional distress upon Nicole James | | | *P:Dismiss with prej. (Doc. 83)* | | |
| Count XI - False imprisonment of Cheryl James | | | *P:Dismiss with prej. (Doc. 83)* | | |
| Count XIX-Civil Rights claim under §1983 (4th Am). | X | X | *P:Police w/ prej;City w/o prej. (Doc. 83)* | X | X |

which

Plaintiffs oppose dismissal of the following claims:

- Counts II & III against Officers Marshall, Stout, and Monk;

- Count XIX as to all movants except Wilkes-Barre City and Wilkes-Barre Police Department

Each of these claims will be addressed in turn.

### (A) Counts II and III – False arrest and False imprisonment

Plaintiffs agree to dismiss Counts II and III against Wright Township and Wright Township Police Department without prejudice, pending additional discovery. Movants also seek dismissal of these claims as to Officers Marshall, Stout and Monk, contending that they are entitled to qualified immunity, and that plaintiffs have failed to state claims for these causes of action.

### 1.    False Arrest

Plaintiffs argue that Cheryl was arrested when police officers "insisted" that one of Nicole's parents accompany her to the hospital, and when she was transported to the hospital in the ambulance with her daughter. Plaintiffs maintain that this constituted an involuntary removal of Cheryl from her home. Plaintiffs admit, however, that Cheryl was not touched or restrained, nor were the officers seeking to bring her before a court or otherwise securing the administration of law. *See* Restatement (Second) of Torts, § 112.

The Supreme Court instructs that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that [she] was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). Here, the facts show only that Cheryl was persuaded to go to the hospital with her daughter.

A claim under §1983 for false arrest is grounded in the Fourth Amendment guarantee against unreasonable seizures. Garcia v. County of Bucks, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001) (citing Groman v. Township of Manalapan, 47 F.3d 628, 636 (3d Cir.1995). To succeed on a §1983 false arrest claim, a plaintiff must establish two elements: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." Barnes v. Plainsboro Township Police Dep't, Civ. A. No. 07-1776(JAG), 2007 WL 2011264, at *2 (D.N.J. July 6, 2007).

An arrest is the taking of another person into custody under an assertion of legal authority to do so and for the purpose of bringing that person before a court or otherwise securing the administration of law. *See* Restatement (Second) of Torts, § 112.This court has defined "arrest" as follows:

> "the taking, seizing, or detaining of the person of another, (1) by touching or putting hands on the arrestee; (2) or by any act that indicates an intention to take the arrestee into custody and that

12

> subjects the arrestee to the actual control and will of the person
> making the arrest; or (3) by the consent of the person to be arrested.
> There can be no arrest where there is no restraint and the restraint
> must be under real or pretended legal authority. However, the
> detention of a person need not be accompanied by formal words of
> arrest or station house booking in order to constitute 'arrest.' Whether
> the restraint or detainment was sufficient to rise to the level of arrest
> will in many cases turn on the length of the detention, and the degree
> of restraint. The ultimate inquiry is simply whether there is a formal
> arrest or restraint on freedom of movement of the degree associated
> with formal arrest."

Bristow v. Clevenger, 80 F. Supp. 2d 421, 436 (M.D. Pa. 2000). Further, a seizure

is "a show of authority that restrains the liberty of a citizen, or a government

termination of freedom of movement intentionally applied." Gallo v. City of

Philadelphia, 161 F.3d 217, 223 (3d Cir.1998) (internal citations omitted). A

seizure triggering the Fourth Amendment's protections occurs only when

government actors have, "by means of physical force or show of authority, ... in

some way restrained the liberty of a citizen." Graham v. Connor, 490 U.S. 386,

395 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 19, n.16 (1968)). As articulated by

our Court of Appeals, "[a] person is seized for Fourth Amendment purposes only

if he is detained by means intentionally applied to terminate his freedom of

movement. A seizure occurs even when an unintended person is the object of

detention, so long as the means of detention are intentionally applied to that

person." Berg v. County of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000).

13

Accepting plaintiffs' factual assertions as true, it is clear that no arrest or seizure occurred in this case. *See* Karam v. City of Burbank, 352 F.3d 1188, 1194 (9th Cir.2003); Golya v. Golya, No. 3:05-CV-100, 2007 WL 2301085, *6 (M.D. Pa. Aug. 9, 2007); Esposito v. Galli, No. 4:04-CV-475, 2006 WL 2322487, *9 (M.D. Pa. Aug. 9, 2006) (no seizure where plaintiff voluntarily appeared for arraignment following issuance of arrest warrant).  As noted above,  "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). Here, plaintiffs do not state a plausible claim for relief for false arrest based upon the facts before the court. Additional time for discovery will not change the simple facts surrounding Cheryl's trip to the hospital and, therefore, these claims should be dismissed with prejudice.

In light of the foregoing recommendation, the issue of qualified immunity need not be addressed.

2.    *False Imprisonment*

 "[F]alse arrest and false imprisonment are nearly identical claims and are generally analyzed together." Id. at 571, n.8; Olender v. Twp. of Bensalem, 32 F. Supp. 2d 775, 791 (E.D. Pa.1999) ("[F]alse arrest and false imprisonment are essentially the same claim.") (citing Pennsylvania cases). However, false arrest

requires an arrest made without probable cause, while false imprisonment requires an unlawful detention of another person. Brockington v. City of Philadelphia, 354 F. Supp. 2d 563, 572, n.10 (E.D. Pa.2005).

A claim of false imprisonment under Pennsylvania law requires: "(1) the detention of another person, and (2) the unlawfulness of such detention." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (1994). An actor is liable for false imprisonment if "(1) he acts intending to confine the other or a third person within boundaries fixed by the actor and (2) his act directly or indirectly results in such a confinement of the other, and (3) the other is conscious of the confinement or is harmed by it." Crivellaro v. Pa. Power and Light Co., 24 Pa.D. & C.3d 590, 595 (Pa. Com. Pl.1982).

A plaintiff cannot establish a claim for false imprisonment if there is a known means of escape involving nothing more than slight inconvenience. In other words, the confinement must be complete. Caswell v. BJ's Wholesale Co. et. al., 5 F. Supp. 2d 312, 319 (E.D. Pa.1998). Moreover, in the absence of physical force or physical barriers, a plaintiff must make some attempt to determine whether she is actually confined. Id. Absent force or physical barriers, a claim of false imprisonment cannot rest upon a mere belief that one is confined. Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 541 (E.D. Pa.1982). Rather, a

plaintiff must "attempt to determine whether his belief that his freedom of movement has been curtailed has basis." Id. at 540-41.

In the present case, Cheryl James was urged by officers to accompany her minor daughter in the ambulance to the hospital. As discussed *supra*, there was no restraint involved, and although Cheryl contends that she was confined within the ambulance, there is no suggestion that Cheryl was not free to leave had she so requested. Since no plausible claim for relief has been stated, Count III should be dismissed with prejudice against all defendants named.

*(B) Section 1983*

Movants further contend that plaintiffs have failed to state a claim under 42 U.S.C. §1983, which provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id. Section 1983 imposes civil liability upon any person who, under color of state law, deprives someone of the rights, privileges, or immunities secured by the federal Constitution or the laws of the United States. Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000). Section 1983 "is not itself a source of substantive rights,

but merely provides a method for vindicating federal rights elsewhere conferred."
Graham, 490 U.S. at 393-94. To establish a §1983 claim, therefore, a plaintiff
"must demonstrate a violation of a right secured by the Constitution and the laws
of the United States [and] that the alleged deprivation [violation of a right] was
committed by a person acting under the color of state law." Kneipp v. Tedder, 95
F.3d 1199, 1204 (3d Cir. 1996).

As noted in the chart, *supra* at p.9, plaintiffs assert the §1983 claim against
the Wright Twp. City and Police Dept., and Officers Marshall, Stout, and Monk.
Plaintiffs are willing to dismiss the §1983 claim against the Wilkes-Barre Police
Dept. *with prejudice* and the §1983 claim against the City of Wilkes-Barre *without
prejudice* pending additional discovery on the issue of policy or custom.

1.      *Wright Township*

"A local governing body can be held liable only for an official policy or
custom." San Filippo v. Bongiovanni, 30 F.3d 424, 445 (3d Cir.1994). Torts
committed by employees do not make a municipality liable but  a municipal
employee's actions in accordance with a constitutionally deficient policy may
serve the basis for municipal liability. *See* Monell v. Dept. of Soc. Servs. of the
City of New York, 436 U.S. 658, 694 (1978). Under the standard first articulated
in Monell, "local governing bodies ... can be sued directly under §1983 ... where,

as here, the action that is alleged to be unconstitutional implements or executes a

policy statement, ordinance, regulation, or decision officially adopted and

promulgated by that body's officers." Id. at 690. Thus, "[a] public entity ... may he

held liable for the violation of a constitutional right under 42 U.S.C. §1983 only

when the alleged unconstitutional action executes or implements policy or a

decision officially adopted or promulgated by those whose acts may fairly be said

to represent official policy." Reitz v. County of Bucks, 125 F.3d 139, 144 (3d

Cir.1997). Liability exists when "'there is a direct causal link between a municipal

policy or custom and the alleged constitutional deprivation.'" Brown v.

Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (quoting City of Canton v.

Harris, 489 U.S. 378, 385 (1989)).

      "A policy is an official proclamation or edict of a municipality, while a

custom is a practice that is 'so permanent and well-settled as to virtually constitute

law.'" Crouse v. South Lebanon Twp., 668 F. Supp. 2d 664, 675 (M.D. Pa. 2009)

(Conner, J.) (quoting Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)

(quoting, in turn, Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990)

(citations omitted)). However, "[a] custom need not be 'formally approved by an

appropriate decision-maker,' but must be 'so widespread as to have the force of

law.'" Id. at 675-76 (quoting Natale v. Camden County Corr. Facility, 318 F.3d

575, 584 (3d Cir. 2003) (quoting, in turn, <u>Board of County Com'rs of Bryan County, Okl. v. Brown</u>, 520 U.S. 397, 404 (1997)). There are three scenarios in which a government employee's actions are deemed to result from a policy or custom of a municipality: (1) when an officer or entity officially promulgates a policy statement, and the employee's act is an implementation of that policy; (2) when the act of the policymaker violates federal law; and (3) when a policymaker fails to act affirmatively, despite the obvious need for action to control agents of the government. <u>Natale</u>, *supra*.

Plaintiffs concede that the complaint does not allege that Wright Township had customs or policies pursuant to which the police officers acted in violation of plaintiffs' constitutional rights, nor did plaintiffs file an amended complaint after Wright Township filed its motion to dismiss. Nonetheless, plaintiffs request that discovery be permitted in order to marshal facts to support this possible claim. Absent an allegation, plaintiffs have not stated a prima facie case, and dismissal of the claim without permitting discovery is proper. *See* <u>McGovern v. City of Philadelphia</u>, 554 F.3d 114 (3d Cir. 2009) (noting that even a mechanical recitation of the elements of a <u>Monell</u> claim fall well below this standard); <u>Marran v. Marran</u>, 376 F.3d 143, 156 (3d Cir.2004). *But see* <u>Davis-Heep v. City of Phila.</u>, No. 09-5619, 2010 WL 1568502, at *7 (Apr. 19, 2010) (permitting the employee

to establish the existence of a custom through the discovery process, where former

employee alleged that the city's policy was to retaliate against its employees for

exercising their First Amendment rights).

 With regard to pleading <u>Monell</u> claims, this court has held that merely

alleging that a municipality has "engaged in a policy, custom, and practice" that

violated plaintiff's federal rights is precisely the formulaic recitation of legal

elements that the Supreme Court determined was insufficient in defeating a motion

to dismiss. <u>Heilman v. T.W. Ponessa & Assocs.</u>, No.: 4:07-CV-1308, 2008 WL

275731,* 14 (M.D. Pa. Jan. 30, 2008).

 While Plaintiffs need not plead detailed facts regarding the alleged policy,

custom, or practice, they must, in the very least, plead facts that: (a) put

Defendants on notice with regard to the basis for the alleged policy, custom, or

practice; and (b) "show" that she is entitled to relief as a result of that policy,

custom, or practice. *See* <u>Twombly</u>, 127 S.Ct. at 1964.

 Inasmuch as plaintiffs have failed even to *allege* a claim under <u>Monell</u>,

dismissal of this claim against Wright Township, with prejudice, is warranted.

 2. *Wright Twp. Police Department*

 As a matter of law, police departments are not "persons" subject to suit

under 42 U.S.C. §1983.  *See* <u>Terrell v. City of Harrisburg Police Dept.</u>, 549 F.

Supp.2d 671, 686 (M.D. Pa. 2008). The motion to dismiss Count XIX as to the

Wright Twp. Police Department should, therefore, be granted.

     *3.*      *Officers Marshall, Stout and Monk*

     Movants also contend that the complaint fails to state a claim under §1983

with respect to Officers Marshall, Stout and Monk. Plaintiffs assert that Cheryl

James had a liberty interest in remaining in her home. By compelling her to travel

with her daughter via ambulance to the hospital, plaintiffs aver that they interfered

with this liberty interest and violated her constitutional rights without due process

of law.

     The Due Process Clause of the Fourteenth Amendment provides that no

state shall "deprive any person of life, liberty, or property without due process of

law." U.S. Const. amend. XIV, § 1. "'Liberty from bodily restraint always has

been recognized as the core of the liberty protected by the Due Process Clause

from arbitrary governmental action.'" <u>Youngberg v. Romeo</u>, 457 U.S. 307, 316

(1982) (quoting <u>Greenholtz v. Nebraska Penal Inmates</u>, 442 U.S. 1, (1979)

(Powell, J., concurring in part and dissenting in part)).

     When presented with an issue asserting a liberty interest, "courts must

[first] address the threshold issue in any action brought under §1983: 'whether the

plaintiff has alleged the deprivation of an actual constitutional right at all.'" <u>Butera</u>

v. District of Columbia, 235 F.3d 637, 646 (D.C. Cir.2001) (quoting Wilson v.

Layne, 526 U.S. 603, 609 (1999)); *see also* Conn v. Gabbert, 526 U.S. 286, 290

(1999). "[B]y establishing a threshold requirement – that a challenged state action

implicate a fundamental right – before requiring more than a reasonable relation to

a legitimate state interest to justify the action, it avoids the need for complex

balancing of competing interests in every case." Washington v. Glucksberg, 521

U.S. 702, 722 (1997).

Here, Cheryl James has not shown she was deprived of any constitutionally

cognizable property or liberty interest. As noted above, Cheryl James was neither

arrested nor imprisoned by the police officers; she merely was persuaded to

accompany her daughter to the hospital to ensure that she had not taken a

dangerous or lethal dose of ibuprofen. Because she was not ordered to leave her

home nor forcibly removed therefrom, Cheryl James has failed to allege the

deprivation of a constitutional right. Her claim against Officers Marshall, Stout

and Monk should, therefore, be dismissed with prejudice.[13]

---

[13]  Dismissal of this claim is also sought on behalf of Casey, to the extent it is brought against him in his official capacity.

22

*(C) Punitive Damages*

Punitive damages are unavailable against municipalities and officials acting in their official capacities in §1983 actions. <u>Gardner v. Barry</u>, No. 1:10-CV-527, 2010 WL 4853885, *2 (M.D. Pa. Nov. 23, 2010*); see* <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981). Plaintiffs have not sued the police officers in their individual capacities.

As to the other claims, in Pennsylvania, "'[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.'" <u>Hutchison ex rel. Hutchison v. Luddy</u>, 870 A.2d 766, 770 (2005) (quoting <u>Feld v. Merriam</u>, 506 Pa. 383, 485 A.2d 742, 747 (1984)). Since "punitive damages are penal in nature," they are available "only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." <u>Id.</u> In determining whether to award punitive damages, "one must look to 'the act itself together with all the circumstances including the motive of the wrongdoers and the relations between the parties.'" <u>Feld</u>, 485 A.2d at 748.

"[A]s the case law establishes, the clear trend in this Circuit is to permit adequately pled claims of punitive damages based on negligence to proceed to discovery." *See* <u>Young v. Westfall</u>, No. 4:06-CV-2325, 2007 WL 675182, *3

(M.D. Pa. March 1, 2007). If the claims against movants are dismissed as recommended, no claims would remain against these parties upon which prayer for punitive damages could be premised. It is recommended, therefore, that the claims for punitive damages be dismissed with prejudice.

## IV. Recommendation

Based on the foregoing, it is respectfully recommended that the four motions to dismiss *sub judice* be granted as follows:

1. Counts I (assault) and VI (intentional misrepresentation) be dismissed, without prejudice, as to Wright Township, Wright Township Police Department, and Officers Marshall, Stout and Monk;

2. Counts IV (negligent infliction of emotional distress) and V (negligent misrepresentation) be dismissed, with prejudice, as to Wright Township, Wright Township Police Department, and Officers Marshall, Stout and Monk.

3. Counts II (false arrest) and III (false imprisonment) be dismissed, with prejudice, as to Wright Township, Wright Township Police Department, Marshall, Stout and Monk.

4. Counts VII (assault); VIII (battery); IX (intentional infliction of emotional distress); X (negligent infliction of emotional distress); and XI (false imprisonment) be dismissed, with prejudice, as to City of Wilkes-Barre and the Wilkes-Barre Police Department.

5. Count XIX (due process under §1983) be dismissed, with prejudice, as to Wright Township and the City of Wilkes-Barre.

24

6.    Count XIX (due process under §1983) be dismissed, with prejudice, as to Wright Township Police Department and Wilkes-Barre Police Department.

7.    Count XIX (due process under §1983) be dismissed, without prejudice, as to Marshall, Stout, Monk and Casey in their official capacities.

8.    The motion to dismiss Plaintiffs' punitive damages claim should be granted.

Dated: June 10, 2011

MILDRED E. METHVIN
UNITED STATES MAGISTRATE JUDGE