### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHERYL JAMES** | **NO. 3:10-CV-1534** |
| **WARREN JAMES** | |
| **NICOLE JAMES** | **JUDGE MUNLEY** |
| | |
| **v.** | **MAGISTRATE JUDGE METHVIN** |

**CITY OF WILKES-BARRE**
**WRIGHT TOWNSHIP, PA**
**WILKES-BARRE POLICE DEPT.**
**CHARLIE CASEY, Wilkes-Barre Police Officer**
**WRIGHT TOWNSHIP POLICE DEPT.**
**DENNIS MONK, Police Officer**
**BRIAN STOUT, Police Officer**
**MICHAEL MARSHALL, Police Officer**
**WILKES-BARRE HOSPITAL CO., L.L.C. d/b/a/**
   **Wilkes-Barre General Hospital**
**WYOMING VALLEY HEALTH CARE SYSTEM**
**DR. RUSSELL JAMES**
**DR. NOEL ESTIOKO**
**DR. MAUREEN LICHTMAN**
**AMY CRAIG, Nurse**
**BETH ANN NOBLE, Nurse**
**BRIAN MORAN, Nurse**
**RYAN SELTZER, Nurse**
**CAROLE PIROW, Nurse**
**KATHY VIDUMSKI, Nurse**
**JASON KILLIAN, Nurse**
**LAURA PAULUKONIS, physicians assistant**
**TANYA OSTOPICK, respiratory therapist**

## REPORT AND RECOMMENDATION ON MOTIONS TO DISMISS
### (Docs. 68, 79)

Before the court are two motions to dismiss: one filed by Wyoming Valley

Health Care System ("WVHCS"), Wilkes-Barre Hospital Company, LLC, d/b/a

Wilkes-Barre General Hospital, Respiratory Therapist Tanya Ostopick, and Nurses

2

Amy Craig, Beth Ann Noble, Brian Moran, Ryan Seltzer, Carole Pirow, Kathy Vidumski and Jason Killian ("hospital movants");[1] and the second by Doctors Russell James, Noel Estioko, Maureen Lichtman, and Physicians Assistant Laura Paulukonis ("physician movants").[2] The motions have been referred to the undersigned for a report and recommendation.[3] The matters are now ripe for disposition.[4]  For the following reasons, it is recommended that the motions be granted in part and denied in part.

---

[1] Doc. 68

[2] Doc. 79

[3]  On April 8, 2001 Judge Munley referred the pending motions to Magistrate Judge William T. Prince. The motions were subsequently referred to the undersigned.

[4] Hospital movants filed their motion to dismiss on October 4, 2010 and their supporting brief on October 13, 2010. (Docs. 68, 73). Plaintiffs filed a brief in opposition on October 25, 2010 (Doc. 78), to which hospital movants filed a reply brief on November 8, 2010 (Doc. 93). Physician movants filed their motion to dismiss on October 27, 2010 (Doc. 79), and their supporting brief on October 29, 2010 (Doc. 85). Plaintiffs filed a brief in opposition to the motion on November 15, 2010 (Doc. 101, erroneously linked to another motion to dismiss, Doc. 97, but in fact the brief addresses Doc. 79), to which movants filed a reply brief on November 18, 2010 (Doc. 103).

3

## FINDINGS AND CONCLUSIONS

### I. Background[5]

Plaintiffs are Cheryl and Warren James, and their daughter Nicole James. The following facts, asserted in plaintiffs' complaint, are presumed true for purposes of this analysis.

On September 28, 2009, Nicole James, then fifteen years old, was distraught over a breakup with her boyfriend. At approximately 10:30 p.m., she sent a text message to a friend stating that she planned to commit suicide by ingesting ibuprofen pills. Police were alerted, and at approximately 10:49 p.m., Officer Marshall with the Wright Township Police Department arrived at plaintiffs' home. He was accompanied by emergency medical personnel and two other police officers: Officer Brian Stout of the Rice Police Department and Officer Dennis Monk of the Fairview Police Department.[6]  When questioned by her parents, Nicole confirmed she had sent the text message and had planned to commit suicide, but stated that she had decided against it and had not ingested any pills. Plaintiffs believed their daughter, and wished to handle the matter internally, but

---

[5] The background was set out in a R&R filed June 10, 2011, in connection with four other motions to dismiss in this case. It is repeated here for ease of reference.

[6]  Plaintiff's complaint erroneously alleged that all three officers were with Wright Township Police Department Police Department, but their correct positions have now been clarified. *See* Doc. 98, p. 2,  Fn.2.

4

the officers "informed Warren and Cheryl that [they] would charge Cheryl and

Warren with assisted manslaughter if something happened to Nicole because they

did not send Nicole to the hospital with the emergency medical services

personnel." [7] Under these circumstances, the parents gave permission for their

daughter to be taken to the hospital. Officers instructed that at least one of the

parents would need to accompany their daughter to the hospital. Because they

had both taken prescription medication,[8] Cheryl and Warren James felt unable to

travel and informed the officers of this fact. However, due to the insistence of the

officers, Cheryl agreed to go to the hospital with Nicole.

Nicole was transported via ambulance to Wilkes-Barre General Hospital

where she was screened for a drug overdose, the results of which were consistent

with the ingestion of ibuprofen within the acceptable therapeutic range. Cheryl

informed hospital personnel that she intended to take her daughter home and would

seek follow-up counseling the next day. Defendant Kathy Vidumsky led Cheryl to

believe that Nicole would be discharged. Instead, unbeknownst to Cheryl, Nicole

---

[7] Complaint, ¶ 50, Doc. 1-3.

[8] Cheryl had taken Seroquel, a medication prescribed by her psychiatrist, and had also ingested "some alcoholic drinks." (Complaint ¶ 43). She alleges the medication left her feeling extremely drowsy. Warren James was taking an unspecified medication for a heart condition which had the same side effect.

5

was placed on a Section 302 hold.[9] As Cheryl and Nicole walked out of the hospital to take a cab home, hospital security – who had been alerted by staff – followed them and told them they should not leave. No reasons were given. Officers with the Wilkes-Barre Police Department then appeared on the scene and forcibly removed Cheryl from the cab. Cheryl was taken back into the hospital where she, too, was placed under a Section 302 hold and forced to undergo a non-consensual medical exam. Blood samples were taken and Cheryl was injected with sedatives. During this time she was restrained on a gurney for approximately four hours. Cheryl was not seen by a physician until later the next afternoon. She was released to her husband at approximately 9 p.m., almost 24 hours after the initial events.

During the time these events unfolded, Luzerne County Children and Youth Services ("CYS") repeatedly called the James home, awakening Warren James. CYS requested that Warren sign a release committing his daughter to a psychiatric counseling center.  Warren signed and faxed the release to CYS because, he asserts, CYS threatened him with loss of custody of his daughter if he did not

---

[9] Section 302 of the Pennsylvania Mental Health Procedures Act, 50 Pa. Stat. Ann. §7302 authorizes involuntary mental health examinations in certain emergency situations, up to a period of 120 hours.

6

comply.[10]  When Warren contacted the hospital to locate his wife, the hospital refused to provide him with any information.

The present action followed. Defendants are various police departments, police officers, local government entities, hospitals, physicians, and health care providers. Plaintiffs' claims include assault, battery, false arrest, false imprisonment, negligent infliction of emotional distress, intentional infliction of emotional distress, negligent misrepresentation, intentional misrepresentation, and claims under 42 U.S.C. §1983. The suit was removed to this court from the Court of Common Pleas of Luzerne County on July 23, 2010.[11]

## II. Rule 12(b)(6) standard of review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims that fail to assert a basis upon which relief can be granted. When considering a motion to dismiss, the court must "accept all [of plaintiff's] factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir.2008) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374

---

[10]  Plaintiffs aver that CYS subsequently closed its file of the matter after an inspection of the James home revealed nothing of concern.

[11]  Doc. 1, Ex. 2

n.7 (3d Cir.2002)). *See also Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309, 1322–23 (2011).

The complaint must set forth sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The question is not whether the plaintiff will ultimately prevail, but whether the "complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S.Ct. 1289, 1296 (2011)(citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002)).

Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must do more than present "bald assertions" and "legal conclusions." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.* Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.

*Twombly*, 550 U.S. at 545 (citations omitted)(emphasis added). Plaintiffs must nudge their claims "across the line from conceivable to plausible." *Id.* at 570. *See also Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).

8

A plaintiff "armed with nothing more than conclusions" is not entitled to

discovery. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). Consequently, "where

the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged – but it has not 'show[n]' –

'that the pleader is entitled to relief,'" and the complaint should be dismissed. *Id.*

(quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

The "plausible grounds" requirement "does not impose a probability

requirement at the pleading stage; it simply calls for enough facts to raise a

reasonable expectation that discovery will reveal evidence" supporting the

plaintiff's claim for relief. *Twombly*, 550 U.S. at 556. Determining plausibility is "a

context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Iqbal*, 129 S.Ct. at 1950 (*citing Twombly*, 550

U.S. at 557–58).

The court will not dismiss a complaint for failure to state a claim unless it

appears beyond a doubt that "no relief could be granted under any set of facts that

could be proved consistent with the allegations." *Swierkiewicz*, 534 U.S. at 514

(*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73, (1984)).

The Third Circuit has outlined a two-part analysis that courts should utilize

when deciding a motion to dismiss for failure to state a claim. *Fowler v. UPMC*

*Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements

of a claim should be separated. In other words, while courts must accept all of the

complaint's well-pleaded facts as true, they may disregard any legal conclusions.

Second, courts then decide whether the facts alleged in the complaint are sufficient

to demonstrate that the plaintiff has a "'plausible claim for relief.'" *Id.* at 210

(quoting *Iqbal*, 129 S. Ct. at 1950). That is, a complaint must do more than allege

the entitlement to relief; its facts must show such an entitlement. *Id.* at 211.

## III. Discussion

Movants present the following arguments:

A.   The §1983 claims should be dismissed because movants are not "state actors" for purposes of §1983 liability;

B.   Plaintiffs' claims are barred by the Mental Health Procedures Act ("MHPA");

C.   Plaintiffs have failed to satisfy the pleading requirements for the state law claims;

D.   The claim for punitive damages is unsupported by the factual averments of the complaint;

Each of these issues will be addressed in turn.

### A. Section 1983 Liability (Count XIX)

Section 1983 imposes civil liability upon any person who, under color of

state law, deprives someone of the rights, privileges, or immunities secured by the

10

federal Constitution or the laws of the United States. *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v, Connor,* 490 U.S. 386, 393-94 (1989). To establish a §1983 claim, therefore, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation [violation of a right] was committed by a person acting under the color of state law." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

Plaintiffs seek redress under the Fourth and Fourteenth Amendments, which apply only to governmental entities. *United States v. Price*, 383 U.S. 787, 794 n. 7 (1966); *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948). In the instant matter, the movants are private individuals and corporate entities. Inasmuch as they are not government entities, liability will only attach under §1983 if they can be "fairly said to be [] state actor[s]." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

In instances where a private actor is accused of committing a constitutional tort, "the principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009)

(quoting *Leshko v. Servis,* 423 F.3d 337, 339 (3d Cir. 2005)). The Supreme Court has observed that the criteria for determining whether state action is present "lack rigid simplicity," but it has identified factors that bear on the question:

> We have, for example, held that a challenged activity may be state action when it results from the State's exercise of "coercive power," when the State provides "significant encouragement, either overt or covert," or when a private actor operates as a "willful participant in joint activity with the State or its agents."  We have treated a nominally private entity as a state actor when it is controlled by an "agency of the State," when it has been delegated a public function by the State, when it is "entwined with governmental policies," or when government is "entwined in [its] management or control."

*Benn v. Universal Health System, Inc.*, 371 F.3d 165, 171 (3d Cir.2004) (citations omitted). *See also Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).

Here, movants contend that the complaint does not allege that movants are state actors, or that there was a joint plan with state actors to act on behalf of the state. Movants contend that their actions did not establish a formal relationship with the state so as to convert them from private actors into state actors. Moreover, movants note that there is no vicarious liability available under §1983.

Plaintiffs argue that movants aided police in detaining Cheryl James, obtained the police incident report and acted upon it, and that therefore movants can be considered state actors.

12

With respect to involuntary mental health examinations performed under Section 302, jurisprudence can be found on both sides of the "state actor" issue with respect to physicians and health providers. Some district courts have found state action in the context of involuntary commitment where there was significant interdependence or entwinement between the state and hospital or doctors. *See, e.g.*, *Schorr v. Borough of Lemoyne*, 265 F. Supp.2d 488 (M.D. Pa. 2003) (summary judgment denied where evidence of record supported a finding that hospital was acting under color of state law); *Ruhlmann v. Ulster County Dep't of Soc. Servs.,* 234 F. Supp.2d 140, 165, (N.D.N.Y.2002) (material issue of fact existed as to whether state action issue was satisfied under the compulsion test); *Tewksbury v. Dowling*, 169 F. Supp.2d 103, 109 (E.D.N.Y.2001)(medical defendants acted jointly with state actors and the decision to commit was not made pursuant to "independent medical judgment"); *Moore v. Wyo. Med. Ctr.*, 825 F. Supp. 1531 (D. Wyo.1993); *Rubenstein v. Benedictine Hosp.,* 790 F. Supp. 396 (N.D.N.Y.1992) (defendant hospital had a contract with the county to provide the involuntary commitment services, and therefore state action was present).

There are also cases in which district courts have declined to find health care providers were state actors in the involuntary commitment process. *See Janicsko v. Pellman*, 774 F. Supp. 331 (M.D. Pa.1991) (involuntary commitment was not

function compelled by or sufficiently connected to state directives to attribute those

actions to states); *Spencer v. Lee*, 864 F.2d 1376 (7th Cir.1989) (private physicians

and a private hospital did not act under color of state law when they committed

mentally disturbed person).

Given the presence of authority on both sides of this issue, the motion to

dismiss Count XIX on grounds that the movants are not state actors should be

denied. Plaintiffs have alleged specific facts supporting at least a "plausible" claim

to relief under § 1983. *Twombly*, 550 U.S. at 570.

## B. Immunity under the Mental Health Procedures Act

Movants seek dismissal of plaintiffs' claims on grounds that the MHPA

provides broad immunity "to physicians and others who participate in the

involuntary commitment process." *Benn v. Universal Healthy Sys., Inc.*, 371 F.3d

at 176. The MHPA provides, in pertinent part:

> In the absence of willful misconduct or gross negligence, a county
> administrator, a director of a facility, a physician, a peace officer or
> any other authorized person who participates in a decision that a
> person be examined or treated under this act, ... shall not be civilly or
> criminally liable for such decision or for any of its consequences.

50 P.S. § 7114(a). "Treatment" is defined as "diagnosis, evaluation, therapy, or

rehabilitation needed to alleviate pain and distress and to facilitate the recovery of

a person from mental illness and shall also include care and other services that

supplement treatment and aid or promote such recovery." 50 P.S. §7104.

Under this provision of the MHPA, the standard of care for mental health

providers is gross negligence. *See Cohen v. Kids Peace Nat. Centers, Inc.,* 256 F.

App'x 490, 492 (3d Cir.2007). For purposes of the MHPA, the Pennsylvania

Supreme Court has defined "gross negligence" as "more than ordinary

carelessness, inadvertence, laxity, or indifference. The behavior of the defendant

must be flagrant, grossly deviating from the ordinary standard of care." *Albright v.*

*Abington Mem'l Hosp.*, 696 A.2d 1159, 1164 (Pa.1997) *(quoting Bloom v. DuBois*

*Reg'l Med. Ctr.,* 597 A.2d 671, 679 (Pa. Super. 1991)). Willful misconduct exists

when "the danger to the plaintiff, though realized, is so recklessly disregarded that,

even though there be no actual intent, there is at least a willingness to inflict injury,

a conscious indifference to the perpetration of the wrong." *Doby v. Decrescenzo*,

171 F.3d 858, 875 (3d Cir. 1999) *(quoting Krivijanski v. Union R. Co.,* 515 A.2d

933, 937 (Pa. Super.1986). Although the question of whether the movants acted

with gross negligence will generally be a question of fact, a court may decide the

issue as a matter of law where no reasonable jury could find gross negligence.

*Albright*, 696 A.2d at 1164-65.

15

Plaintiffs raise several due process issues which, they contend, preclude a grant of immunity to movants under the MHPA. Plaintiffs cite the both the lack of an examination within two hours of arrival,[12] and the failure to provide written notice to Cheryl James setting forth the grounds for her examination and treatment,[13] as required under the MHPA.

In its Statement of Policy, the MHPA requires adherence to principles of due process. 50 Pa. Stat. Ann. § 7102. "It would seem anomalous to read one provision of the Act as ensuring due process guarantee and in another provision absolve all violations." *Stock v. Forbes Health System*, 697 F. Supp. 1399, 1400 (W.D. Pa.1988).[14]

The application of immunity to movants under §7114 is unclear at this juncture, given the existence of unresolved factual determinations regarding the delay in examination, if any, and whether Cheryl James was given written notice of the reasons for the examination. In addition, aside from the physicians, there is the

---

[12]  A person taken to a facility must be examined by a physician within two hours.  50 Pa. Stat. Ann. § 7302(b).

[13]  The individual thought to need treatment shall be provided "a written statement setting forth the grounds for believing the person to be in need of examination." 50 Pa. Stat. Ann. § 7302(a)(2).

[14]  Moreover, "the immunity provisions purport to immunize officials for their treatment decisions, not for failure to conduct the required examinations reviews and hearings in a timely fashion[.]" Id.

question of whether those attending to Cheryl James had training or experience in the mental health field so as to be considered "authorized persons" for purposes of immunity under §7114. *See Doby v. DeCrescenzo,* Civ. A. No.: 94-3991, 1995 WL 385100, *2 (E.D. Pa. June 27, 1995); *McNamara v. Schleifer Ambulance Serv., Inc.*, 556 A.2d 448, 449-50 (Pa. Super. 1989).

As noted above, dismissal for failure to state a claim is proper only where it appears beyond a doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz*, 534 U.S. at 514 (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73, (1984)). It is far from clear whether movants are entitled to immunity under the MHPA. Accordingly, it is recommended that the motion to dismiss be denied on this issue.

## C. State Law Claims

Movants contend that Cheryl and Nicole James have failed to assert the requisite physical injuries needed to state claims for intentional infliction of emotional distress (Count IX) and negligent infliction of emotional distress (Count X).  Movants also argue they are immune from liability from the other torts alleged, *to wit.*, false imprisonment (Counts XI and XIV); false arrest (Count XV); assault (Counts VII and XII); battery (Counts VIII and XIII); gross medical

negligence (Count XVI); medical negligence (Count XVII) and negligent

maintenence of facilities (Count XVIII).

### 1. Negligent Infliction of Emotional Distress (Count X)

To state a claim for negligent infliction of emotional distress, a plaintiff must

allege that she suffered a physical injury as a result of the defendant's negligence.

*Armstrong v. Paoli Mem'l Hosp.*, 430 Pa. Super. 36, 633 A.2d 605, 609 (1993); *see*

*Michtavi v. United States*, Civ. A. No. 07-628, 2009 WL 578535,*24  (M.D. Pa.

Mar. 4, 2009) (dismissing negligent infliction of emotional distress claim because

plaintiff failed to allege immediate and substantial physical harm as required by

Pennsylvania law).  A physical injury includes physical manifestations of

emotional distress or specific physical harm, injury or illness occurring as a result

of appellee's conduct. Edmonson v. The Bug Stop, Inc., Civ. A. No.: 00-2793,

2001 WL 1160761, *2 (E.D. Pa. Aug. 16, 2001).

> The cause of action for negligent infliction of emotional distress is
> restricted to four factual scenarios: (1) situations where the defendant
> had a contractual or fiduciary duty toward the plaintiff; (2) the
> plaintiff was subjected to a physical impact; (3) the plaintiff was in a
> zone of danger, thereby reasonably experiencing a fear of impending
> physical injury; or (4) the plaintiff observed a tortious injury to a close
> relative.

Goodson v. Kardashian, No. 10-3976, 2011 WL 167272, *1-2 (3d Cir. Jan. 20,

2011)(quoting Toney v. Chester County Hosp., 961 A.2d 192, 197–98 (Pa. Super.

Case 3:10-cv-01534-MWB   Document 110   Filed 06/17/11   Page 18 of 27

18

2008)). In Pennsylvania, it is clear that the plaintiff must allege that he suffered physical harm in order to sustain an action for negligent infliction of emotional distress. *See Armstrong*, *supra* at 609; *Abadie v. Riddle Memorial Hospital,* 589 A.2d 1143 (Pa. Super.1991); *Houston v. Texaco, Inc.*, 538 A.2d 502 (Pa. Super. 1988)."Temporary fright, nervous shock, nausea, grief, rage, and humiliation if transitory are not compensable harm; but, long continued nausea or headaches, repeated hysterical attacks or mental aberration are compensable injuries." Armstrong, 633 A.2d at 609; *see also Burnett v. Swift Transp., Inc.*, No. 3:07-CV-1490, 2011 WL 533603, *12 (M.D. Pa. Feb. 8, 2011)

Movants assert that plaintiffs have failed to plead a physical injury to Nicole James to state a claim for negligent infliction of emotional distress. Plaintiffs appear to concede this, arguing that dismissal of this claim should be without prejudice so that they may include medical evidence of Nicole James' alleged anxiety. Consequently, it will be recommended that Count X be dismissed.

2. *Intentional Infliction of Emotional Distress (Count IX)*

For a plaintiff to state a claim for intentional infliction of emotional distress, she must establish: (1) the conduct of the defendant was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the distress was severe. *Chuy v. Phila. Eagles Football Club*, 595

F.2d 1265, 1273 (3d Cir.1979). The conduct must be so outrageous as to be beyond

the bounds of decency and intolerable in a civilized society. *See Williams v. U.S.*

*Airways, Inc.*, Civ. A. No. 06-4797, 2007 WL 2667981, *7 (E.D. Pa. Sept. 5,

2007).  With respect to such a claim, the Pennsylvania Supreme Court has

observed:

> The conduct must be so outrageous in character, and so extreme in
> degree, as to go beyond all possible bounds of decency, and to be
> regarded as atrocious, and utterly intolerable in a civilized society.
> Described another way, it has not been enough that the defendant has
> acted with intent which is tortious or even criminal, or that he has
> intended to inflict emotional distress, or even that this conduct has
> been characterized by malice, or a degree of aggravation that would
> entitle the plaintiff to punitive damages for another tort."

*Hoy v. Angelone*, 720 A.2d 745, 754 (Pa.1998) (citations omitted). "[I]t is for the

court to determine in the first instance whether the defendant's conduct may

reasonably be regarded as so extreme and outrageous to permit recovery." *Johnson*

*v. Caparelli*, 625 A.2d 668, 671-72 (Pa. Super. 1993).

A plaintiff must also establish physical injury or harm. *See Kazatsky v. King*

*David Memorial Park*, 527 A.2d 988, 995 (Pa.1987)); *Hart v. O'Malley*, 647 A.2d

542 (Pa. Super.1994) ("it is clear that in Pennsylvania, in order to state a claim

under which relief can be granted for the tort of intentional infliction of emotional

distress, the plaintiff must allege a physical injury"); *Rudas v. Nationwide Mut. Ins.*

*Co.*, 1997 WL 11302, at *6 (E.D. Pa. Jan.10, 1997) (dismissing claim for

intentional infliction of emotional distress where the plaintiff had not alleged physical injury). It is not enough to merely allege severe distress. *Fewell v. Besner*, 664 A.2d 577 (Pa. Super.1995) (affirming the grant of preliminary objections as to plaintiff's claim of intentional infliction of emotional distress where plaintiff failed to allege physical injury). In order to recover on a claim of intentional infliction of emotional distress, the plaintiff must put forth "competent medical evidence" supporting a claim for alleged emotional distress. *Kazatsky*, *supra* (holding that the plaintiff's recovery was barred by their failure to present competent medical evidence of their alleged emotional distress).

Movants argue, again, that plaintiff's lack of physical injury precludes this claim. Even accepting the factual allegations in the complaint as true, restraining, sedating and drawing blood from Cheryl James do not appear to be actions that rise to the level of intolerable behavior needed to state a claim for intentional infliction of emotional distress. *See Littleton v. State Farm Fire & Cas. Co.*, Civ. A. No. 07-1515, 2007 WL 3237516, *14-15 (M.D. Pa. Oct. 29, 2007) (citing extreme examples constituting outrageous behavior). Additionally, Pennsylvania courts have rarely held that a defendant's behavior constituted outrageous conduct. *See* id. Plaintiffs request that any dismissal be without prejudice pending development of

medical evidence to support this allegation. Dismissal of this claim is warranted, without prejudice.

### 3.  *False Arrest/False Imprisonment (Counts XI, XIV, XV)*

"[F]alse arrest and false imprisonment are nearly identical claims and are generally analyzed together." *Brockington v. City of Philadelphia*, 354 F. Supp. 2d 563, 572, n.8 (E.D. Pa.2005); *Olender v. Twp. of Bensalem*, 32 F. Supp. 2d 775, 791 (E.D. Pa.1999) ("[F]alse arrest and false imprisonment are essentially the same claim.") (citing Pennsylvania cases). However, false arrest requires an arrest made without probable cause under purported legal authority, while false imprisonment involves the unlawful detention of another person. *Brockington*, 354 F. Supp. 2d at 572, n.10. "The basis for false arrest is the arrest itself, whereas the basis for false imprisonment is the detention that follows the false arrest."*Reedy v. Township of Cranberry*, No.2:06-CV-1080, 2007 WL 2318084, *3 (W.D. Pa Aug. 9, 2007)*.* In an earlier Report and Recommendation on motions to dismiss filed by the municipal and police defendants, it was concluded that there was no "arrest" of Cheryl James under the facts presented. The analysis applies equally here, and therefore only the false imprisonment claim will be addressed.[15]

---

[15] It should be noted that the false arrest claim is not brought against the Wilkes-Barre Police Department, which, the complaint asserts, is the party responsible for the 302 arrest pursuant to which she was returned to the hospital and held. Accordingly, it will be recommended that the motion to dismiss be granted on the false arrest claim (Count XIV).

22

A claim of false imprisonment under Pennsylvania law requires: "(1) the detention of another person, and (2) the unlawfulness of such detention." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (1994). An actor is liable for false imprisonment if "(1) he acts intending to confine the other or a third person within boundaries fixed by the actor and (2) his act directly or indirectly results in such a confinement of the other, and (3) the other is conscious of the confinement or is harmed by it." *Crivellaro v. Pa. Power and Light Co.*, 24 Pa. D. & C.3d 590, 595 (Pa. Com. Pl.1982).

A plaintiff cannot establish a claim for false imprisonment if there is a known means of escape involving nothing more than slight inconvenience. In other words, the confinement must be complete. *Caswell v. BJ's Wholesale Co. et. al.*, 5 F. Supp. 2d 312, 319 (E.D. Pa.1998). Moreover, in the absence of physical force or physical barriers, a plaintiff must make some attempt to determine whether she is actually confined.  Id. Absent force or physical barriers, a claim of false imprisonment cannot rest upon a mere belief that one is confined. *Chicarelli v. Plymouth Garden Apartments*, 551 F. Supp. 532, 541 (E.D. Pa.1982).  Rather, a plaintiff must "attempt to determine whether his belief that his freedom of movement has been curtailed has basis." Id.  at 540-41.

23

In the present case, Cheryl James was taken into the hospital and restrained. She was not free to leave. Movants intended to restrain her, did restrain her and she was aware of this restraint. Although movants may argue that the detainment was accompanied by the administration of medical care, plaintiffs have, nonetheless, established the elements for a claim of false imprisonment by hospital staff. *See* Brownstein v. Gieda, 649 F. Supp.2d 368, 376 (M.D. Pa.2009) (although defendants could offer a defense related to their intent or to the needs of medical treatment, plaintiff's claims were sufficient to survive a motion to dismiss the battery claim). It is recommended, therefore, that the motion to dismiss be denied as to Counts XI and XV.

   *4. Assault /Battery (Counts VII, VIII, XII and XVIII)*

   "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk*, 641 A.2d at 293 (quoting *Cohen v. Lit Brothers*, 70 A.2d 419, 421 (1950)). The tort of assault requires that the defendant act with the intent to place the plaintiff in apprehension of imminent harmful or offensive bodily contact and that the plaintiff actually experience such apprehension. *See Heverly v. Simcox*, No. 4:05-1370, 2006 WL 2927262, at *9 (M.D. Pa. Oct. 11, 2006); *Glass v. City of Philadelphia*,

455 F. Supp.2d 302, 365-66 (E.D. Pa.2006); *D'Errico v. DeFazio*, 763 A.2d 424, 431 n. 2 (Pa. Super 2000). Plaintiffs aver that movants attempted to restrain her to provide medical treatment against her will in the sense that she did not seek it, feel it was necessary or acquiesce to it. Such allegations, if established, would demonstrate that the movants intentionally placed Cheryl James in imminent apprehension of harmful contact. Consequently, the motion should be denied on these claims.

Battery requires proof that the defendant acted with the intent to cause harmful or offensive bodily contact with the person of the plaintiff and that such contact actually followed. *See Fulks ex rel. Daniel v. Gasper*, 439 F. Supp.2d 372, 379 (M.D. Pa.2006); *Montgomery v. Bazaz-Sehgal*, 742 A.2d 1125, 1130 (Pa. Super.1999). "Implicit in the tort of battery is the recognition that an individual has a right to be free from unwanted and offensive or harmful intrusions on his own body." Id. The complaint alleges that Cheryl James was sedated and that her blood was drawn. Such allegations permit an inference that movants intended to cause harmful or offensive contact with her. *See Brownstein*, *supra* at 375 (plaintiff stated a claim for battery where complaint alleged that defendants tied him to a

gurney and forced him to submit to a blood draw). These claims, accordingly,

should proceed.[16]

### 5. Negligence Claims (Counts XVI, XVII and XVIII)

The complaint also makes claims of gross medical negligence (Count XVI),

medical negligence (Count XVII), and negligent maintenance (Count XVIII).

Plaintiffs aver as follows:

> Count XVI:  movants acted with gross negligence in issuing an
> unnecessary 302 hold on Cheryl James, restraining and sedating her
> against her will and failing to have her promptly evaluated by a
> physician.

> Count XVII: Doctor Lichtman and Nurse Vidumsky negligently failed
> to inform Cheryl James of the 302 hold on her daughter, Nicole
> James, resulting in plaintiffs' belief that they were free to leave the
> hospital. The placement of the 302 hold on Nicole James without
> plaintiffs' knowledge led to a series of events culminating in Cheryl
> James being placed on a 302 hold, accompanied by assault and
> battery.

> Count XVIII: the failure of the hospital to have a security camera in
> place to monitor the well-being of patients and the safety of visitors
> constitutes negligence. Had cameras been in place, review of footage
> would have indicated that Cheryl James' 302 hold was unnecessary.

Movants contend that they are immune to claims of negligence, premised upon the

grant of immunity under the MHPA. Having concluded above that the applicability

---

[16]  Moreover, although the exact role of each defendant may be unclear at this juncture,
discovery will reveal the precise roles of all involved and establish whether plaintiff can
provide sufficient evidence of each individual's role in each claim.

of immunity under the MHPA is presently unresolved, these claims should

proceed. The motions to dismiss should, accordingly, be denied on these claims.

**D. Punitive Damages**

Finally, movants argue that the conduct alleged in the complaint is not

reckless enough to justify awarding punitive damages against the individual

movants. In Pennsylvania, "'[p]unitive damages may be awarded for conduct that

is outrageous, because of the defendant's evil motive or his reckless indifference to

the rights of others.'" *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770

(2005) (quoting *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 747 (1984)). Since

"punitive damages are penal in nature," they are available "only in cases where the

defendant's actions are so outrageous as to demonstrate willful, wanton or reckless

conduct." *Id.* In determining whether to award punitive damages, "one must look

to 'the act itself together with all the circumstances including the motive of the

wrongdoers and the relations between the parties.'" *Feld*, 485 A.2d at 748.

"[A]s the case law establishes, the clear trend in this Circuit is to permit

adequately pled claims of punitive damages based on negligence to proceed to

discovery." *See Young v. Westfall*, No. 4:06-CV-2325, 2007 WL 675182, *3 (M.D.

Pa. March 1, 2007). Given that dismissal is not recommended on all claims and

that discovery will proceed on the surviving issues, the punitive damages claim,

likewise, should be permitted to go forward.

## IV. Recommendation

Considering the foregoing, it is respectfully recommended that:

1. The motions to dismiss be **DENIED** as to Counts VII and XII (assault); Counts VIII and XIII (battery); Counts XI and XV (false imprisonment); Count XVI (gross medical negligence); Count XVII (negligence); Count XVIII (negligent maintenance); Count XIX (§1983); and as to plaintiffs' claims for punitive damages.

2. The motions to dismiss be **GRANTED** as to Counts IX (negligent infliction of emotional distress) and X (intentional infliction of emotional distress), dismissing these counts *without prejudice*.

3. The motions to dismiss be **GRANTED** as to Count XIV (false arrest), dismissing this count *with prejudice.*

As a housekeeping note, it is further recommended that the court deny as

moot the "motion for order of dismissal" (Doc. 80). This appears to be a proposed

order which should have been filed as an attachment to the motion to dismiss at

Doc. 79. Alternatively, the court may wish to have the Clerk correct the docket

entry.

Signed on June 17, 2011

MILDRED E. METHVIN
UNITED STATES MAGISTRATE JUDGE