# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHERYL JAMES;** | : | **No. 3:10cv1534** |
| **WARREN JAMES; and** | : | |
| **NICOLE JAMES,** | : | **(Judge Munley)** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **THE CITY OF WILKES-BARRE;** | : | |
| **WRIGHT TOWNSHIP;** | : | |
| **WILKES-BARRE HOSPITAL** | : | |
| **COMPANY, LLC, d/ba Wilkes-Barre** | : | |
| **General Hospital;** | : | |
| **THE WYOMING VALLEY HEALTH** | : | |
| **CARE SYSTEM;** | : | |
| **THE WILKES-BARRE CITY POLICE** | : | |
| **DEPARTMENT;** | : | |
| **THE WRIGHT TOWNSHIP POLICE** | : | |
| **DEPARTMENT;** | : | |
| **DR. RUSSELL ELMER JAMES;** | : | |
| **DR. NOEL PACLEB ESTIOKO;** | : | |
| **AMY LYNN CRAIG;** | : | |
| **BETH ANN NOBLE;** | : | |
| **LORA DENISE PAULUKONIS;** | : | |
| **BRIAN THOMAS MORAN;** | : | |
| **TANYA LYNN OSTOPICK;** | : | |
| **RYAN RUSSELL SELTZER;** | : | |
| **CAROLE FLEMING PIROW;** | : | |
| **DENNIS MONK;** | : | |
| **BRIAN STOUT;** | : | |
| **MICHAEL MARSHALL;** | : | |
| **CHARLIE CASEY;** | : | |
| **KATHY PICKARSKI VIDUMSKI;** | : | |
| **JASON FRANK KILLIAN; and** | : | |
| **DR. MAUREEN M. LICTCHMAN** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Before the court are the reports and recommendations of Magistrate Judge Mildred E. Methvin (Docs. 109-110), which propose granting in part and dismissing in part the defendants' motions to dismiss the complaint.

## Background

This case arises from the events of September 28 and 29, 2009.  (Complaint, Exh. 1 to Notice of Removal (Doc. 1) (hereinafter "Complt.") at ¶ 37).   On September 28, Plaintiff Nicole James, then fifteen years old, sent text messages to a friend informing that friend that James intended to commit suicide by taking an overdose of ibuprofen pills.  (Id. at ¶ 38).  At 10:46 p.m., the Defendant Wright Township Police received a phone call informing them of the threatened suicide.  (Id. at ¶ 39).

At the time of this phone call, Plaintiff Warren James, father of Nicole, was sleeping.  (Id. at ¶ 39).  He had taken heart medication, which made him extremely tired and sleepy, shortly before the call came in.  (Id. at ¶¶ 40, 12).  Plaintiff Cheryl James, Nicole's mother, had also taken prescription medicine that evening.  (Id. at ¶ 42).  Like her husband, the prescription medication made Cheryl James tired and sleepy, and she was "unable to stay awake shortly after taking it."  (Id. at ¶ 11).

¶ 11).  She also drank some alcohol on the night in question.  (Id. at ¶ 43).  All three members of the James family were in the basement of their home with the television on at the time of the incident in question.  (Id. at ¶ 41).

Wright Township Police officers Dennis Monk, Brian Stout and Michael Marshall arrived at the James home at 10:49 on September 28.  (Id. at ¶¶ 44-45).  They informed Cheryl James of Nicole's threats.  (Id. at ¶ 44).  The officers' noisy arrival awoke Warren James, and he spoke to the police with his wife.  (Id. at ¶ 46).  Warren and Cheryl James confronted their daughter about the text she had sent her friend.  (Id. at ¶ 47).  Nicole informed them that she had sent a text and had planned to kill herself, but she reconsidered and did not plan to do herself any harm.  (Id.).  Though Nicole James's parents believed her denials, the Wright Township police officers insisted that she be taken to the emergency room at Defendant Wilkes-Barre General Hospital ("the Hospital").  (Id. at ¶ 48).  Warren and Cheryl James disagreed, wanting to handle the matter in their own home.  (Id. at ¶ 49).  The police officers then informed Warren and Cheryl James that they would charge the couple with "assisted manslaughter" if Nicole suffered an injury due to their actions.  (Id. at ¶ 50).  They felt compelled by the officers to give permission to have Nicole taken to the hospital.  (Id. ¶ 51).

The police also informed the Jameses that they would need to accompany Nicole to the hospital.  (Id. at ¶ 52).  Still feeling disoriented from their medication, neither parent felt it safe for them to travel.  (Id. at ¶ 53).  They informed the police

officers of their fears.  (Id.).  Officers still insisted that at least one parent travel with

Nicole James to the hospital.  (Id. at ¶ 54).  Cheryl James judged herself more

capable, and agreed to accompany her to the hospital.  (Id. at ¶ 55).

Nicole received screening for a therapeutic drug overdose at the hospital.  (Id.

at ¶ 56).  The screening showed a slight presence of acetaminophen, a presence

well within the therapeutic dose for a girl Nicole's age.  (Id.).  Nicole James had not

overdosed on ibuprofen.  (Id. at ¶ 57).  The police report indicates that Nicole had

later admitted to taking approximately 30 ibuprofen pills."  (Id.).  Cheryl James recalls

that medical personnel told her around 12:30 a.m. on September 29, 2009, that her

daughter had not overdosed on ibuprofen pills.  (Id. at ¶ 58).

After receiving this information, a relieved Cheryl James informed medical

personnel that she intended to take her daughter home and arrange for her to

receive counseling the next day.  (Id. at ¶ 59).  No one informed Cheryl James that

she could not take her daughter home.  (Id. at ¶ 60).  Indeed, at 12:32 a.m.,

Defendant Kathy Vidumsky led Cheryl James to believe that her daughter would

soon be discharged.  (Id.).  Unbeknownst to Cheryl James, however, Defendant Dr.

Maureen Litchman appears to have put "a 302 hold" on Nicole at 12:30 a.m.  (Id. at ¶

61).  Plaintiffs allege that Nicole James's medical records "appear to have been

tampered with," and that other evidence may indicate that the 302 hold, which

prevented Nicole's release, may have only been placed an hour after Cheryl James

sought her release.  (Id. at ¶ 62).  Staff members, without informing Cheryl James

4

that she could not leave the Hospital with her daughter, contacted hospital security when Cheryl James announced her intention to leave with Nicole.  (Id. at ¶ 63).

At 12:37 a.m. on September 29, Cheryl James called a taxi company for ride home for her and Nicole.  (Id. at ¶ 64).  A minute later, the Hospital contacted social services, citing "unexplained psychological and social concerns."  (Id. at ¶ 65).  Cheryl James alleges that Hospital security personnel followed her and her daughter outside the hospital as they approached the taxi.  (Id. at ¶ 70).  Security did not, however, prevent the two from leaving or inform Cheryl James that she should not leave the hospital.  (Id.).  James also alleges that Wilkes-Barre Police Officers were waiting near the cab when she and her daughter arrived.  (Id. at ¶ 71).

At 1:02 a.m. on September 29, the Wright Township Police Department received a call from Patrolman Charlie Casey of the Wilkes-Barre City Police Department.  (Id. at ¶ 66).  Casey informed the department that "'Cheryl James and her son got into an altercation and left'" the hospital.  (Id.).  Casey requested that the Wright Township Police Department check the James residence and insure the "'welfare of any other children in the house.'" (Id.).

At 1:32 a.m. on September 29, someone made an entry into the General Hospital records that contends that Cheryl James had been admitted on "a 302 arrest."  (Id. at ¶ 67).  The entry also claimed that James had "'hit her head on [a] taxi cab.'" (Id.).  James denies she ever hit her head.  (Id. at ¶ 68).  At the same time, Hospital security contacted the Wilkes-Barre City Police Department.  (Id. at ¶

69).

At 1:33 a.m. Hospital security officers prevented Cheryl and Nicole James from leaving in the taxi. (Id. at ¶ 72). Cheryl was sitting in the taxi and refused to leave. (Id.). Two minutes later, she agreed to get out. (Id. at ¶ 73). At that same time, Hospital "'supervisors were made aware of the situation.'" (Id. at ¶ 74). James was not aware of why she could not leave with her daughter. (Id. at ¶ 75). Security and police personnel informed her that Nicole was subject to a "302 hold." (Id. ¶ 76). At that point, tired, medicated and mildly intoxicated, "stressed to the point of exhaustion," and no longer concerned about Nicole James's immediate safety, Cheryl James told officers that she intended to go home. (Id. at ¶ 77). Hospital security and Wilkes-Barre police informed her that she could not leave, but would not explain why. (Id. at ¶ 78). James insisted that she had a right to leave, and officers forcibly removed her from the taxi, grabbing her about the arms and shoulders. (Id. ¶¶ 79-80). The officers used force to return Cheryl James to the Hospital's emergency room; her daughter witnessed this violent action. (Id. at ¶¶ 81-82).

Officers told Cheryl James that she was the subject of a "302 arrest." (Id. at ¶ 83). Their report alleges they forcibly detained, transported and retained James because she had "'presented to police under the influence of alcohol and prescription medicine . . . subject had an obvious altered level of consciousness." (Id. at ¶ 84). No physician admitted James to the Hospital nor did any physician attended to her during this process. (Id. at ¶ 85). The Wilkes-Barre police officers

6

who brought Cheryl James to the emergency room told attending staff that James had hit her head on a cab and needed evaluation.  (Id. at ¶ 86).  Pictures of James reveal no bruising on her head, however.  (Id. at ¶ 87).  Instead, she had severe bruising on her neck, shoulders and arms.  (Id.).  Medical records related to this incident show no injuries to plaintiff's head, though they do describe other injuries. (Id. at ¶ 88).

After dragging James into the Hospital, Wilkes-Barre police officers and Hospital Security bound her to a gurney that had been prepared by Hospital personnel.  (Id. at ¶ 89).  Cheryl James demanded her release.  (Id. at ¶ 90). Instead, Hospital medical staff, acting either at the direction of the Wilkes-Barre Police or Hospital security, treated plaintiff.   (Id. at ¶ 91).  Medical staff drew blood forcibly from Cheryl James and injected her with sedatives.  (Id. at ¶ 92).  During this entire incident, Cheryl James protested, demanding her release and begging staff not to draw her blood or give her a sedative.  (Id. at ¶ 93).  Staff drew blood and sedated James while the officers present laughed at her plight.  (Id. at ¶ 94).

Plaintiffs allege that Hospital medical personnel knew by 1:38 a.m. that Cheryl James "may not have belonged strapped to a gurney in the emergency room.  (Id. at ¶ 95).  Staff nevertheless continued this restraint.  (Id.).  They also ignored this assessment in sedating James.  (Id.).  Hospital records reveal that the only symptoms James displayed were anger at the treatment she had received and "a smell of alcohol" about her.  (Id. at ¶ 96).  According to blood samples, James's

blood alcohol content ("BAC") at the time of her restraint was 0.073.  (Id.).

Pennsylvania law requires a BAC of 0.08 before a person is considered impaired for

driving.  (Id. at ¶ 97).  The medical records also indicate that James was not a

danger to herself or others.  (Id. ¶ 96).  Hospital medical records indicate that Cheryl

James was restrained because she removed her clothes and attempt to run out of

the building without them.  (Id. at ¶ 98).  Plaintiff alleges that those records are in

error and contradictory, however.  (Id.).  A notation a minute after these allegations

of an attempt at a naked escape indicate that plaintiff was still in her street clothing,

and the hospital then compelled Cheryl James to remove her clothes.  (Id.).

Cheryl James remained in restraints, forced to use a bedpan to relieve herself,

for more than four hours before staff removed the restraints.  (Id. at ¶ 99).  No doctor

saw her until 5:00 p.m. on September 29, 2009.  (Id. at ¶ 100).  Within two hours of

this doctor's examination, Cheryl James underwent a psychiatric examination.  (Id. at

¶ 101).  That examination determined her to be in stable condition, and at 9:00 p.m.

on September 29, 2009 the hospital released her into the care of her husband,

Warren James.  (Id.).

During this period, the phone at the James residence had been ringing

"incessantly."  (Id. at ¶ 102).  The calls came from the Luzerne County Children and

Youth Services Department.  (Id.).  Those repeated calls eventually woke Warren

James up, and he immediately answered the phone.  (Id. at ¶ 103).  The callers

demanded that Warren immediately sign a release that committed his daughter

Nicole to a psychiatric counseling center.  (Id. at ¶ 104). The callers threatened

Warren James with loss of custody if he did not agree to sign.  (Id.).  Stressed by

the situation and fearing the loss of his daughter, Warren James faxed his signature

to representatives of Luzerne County Children and Youth Services.  (Id. at ¶ 105).

Weakened by his heart condition, the stress of the situation, and lack of sleep,

Warren James collapsed back onto his bed.  (Id. at ¶ 106).

When James awoke later in the day he called General Hospital to learn the

location of his wife Cheryl.  (Id. at ¶ 107).  At first, the Hospital would not provide

Warren James with any information.  (Id. at ¶ 108).  Agitated, James threatened to

file a missing person's report if the Hospital did not provide him with basic

information, such as whether or not his wife was at the hospital, and if she was safe.

(Id. at ¶ 109).  The Hospital representative hesitated for a moment before informing

Warren James that his wife was "here and she's safe."  (Id. at ¶ 110).  The

representative then hung up.  (Id.).  He did not hear from his wife until 8:30 p.m. that

evening.  (Id. at ¶ 111).

In the meantime, Warren James met with representatives of Children and

Youth Services at his home.  (Id. ¶ 112).  The department decided to close the case

against the James family after a review of the residence reveal nothing to cause

concern.  (Id. at ¶ 113).

On July 12, 2010, plaintiffs filed a complaint in the Court of Common Pleas of

Luzerne County, Pennsylvania.  The complaint contains nineteen counts.  Most of

those counts are state-law tort claims related to Cheryl James alleged false arrest and imprisonment, as well as negligence claims against various parties.

Defendants removed the case to federal court on July 23, 2010.  They then filed motions to dismiss.  The parties briefed the issues.  The court referred the motions to the magistrate judge, who issued two reports and recommendations.  Various parties then filed objections to these reports and recommendations, bringing the case to its present posture.[1]

**Jurisdiction**

Plaintiffs bring their claims pursuant to 42 U.S.C. § 1983.  The court therefore has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  The court has supplemental jurisdiction over plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report to which objections are made.  28 U.S.C. § 636 (b)(1)(C); see also Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987).  This court may accept, reject, or modify,

---

[1]Two parties have been dismissed from the case by stipulation since the Magistrate Judge issued her report and recommendations.  The court will not address the motions as they pertain to these parties.  The parties who have been dismissed are Brian Stout (Doc. 115) and Dennis Monk (Doc. 120).

in whole or in part, the findings or recommendations made by the magistrate judge. The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

Defendants have filed motions to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). When a defendant files a motion pursuant to Rule 12(b)(6), all well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988) (citing Estate of Bailey by Oare v. County of York, 768 F.3d 503, 506 (3d Cir. 1985), (quoting Helstoski v. Goldstein, 552 F.2d 564, 565 (3d Cir. 1977) (per curiam)). The court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" a standard which "does not require 'detailed factual allegations,'" but a plaintiff must make "'a

11

showing, rather than a blanket assertion, of entitlement to relief' that rises 'above the speculative level.'" McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged."  Id.

**Discussion**

Various parties have filed objections to the reports and recommendations. The court will address each in turn.

### A.  First Report and Recommendation

The magistrate judge issued two reports and recommendations.  The court will address the objections to each separately.  Magistrate Judge Methvin's first report and recommendation addresses the motions to dismiss filed by Wright Township, the Wright Township Police Department and Officer Michael Marshall (Doc. 63), the City of Wilkes-Barre and the Wilkes-Barre Police Department (Doc. 67), Officer Brian Stout (Doc. 90) and Officer Dennis Monk (Doc. 97).[2]

Plaintiffs raise several objections to the first report and recommendation.  The

---

[2]The parties have stipulated to the dismissal of Officers Stout and Monk from the case, and their motions to dismiss have been granted as unopposed (Docs. 90, 97).

court will address each in turn.[3]

### i. False Arrest/Imprisonment Claim

Plaintiffs object to the magistrate judge's finding that Plaintiff Cheryl James's false arrest and false imprisonment claim should be dismissed.  The magistrate judge found that plaintiffs had not alleged that Cheryl James had been seized, but had simply been "persuaded" to go to the hospital with her daughter.  She therefore was not the subject of a false arrest.  Likewise, Cheryl James has failed to allege that she was not free to leave while riding in the ambulance to the hospital if she had requested to do so.  As such, the magistrate judge found, James could not make out a false imprisonment claim.

The question here turns on whether Cheryl James has alleged that she was

---

[3]In their brief in opposition to defendants' motion, plaintiffs summarize defendants' arguments as follows: "(1) that all state claims must be dismissed against the City of Wilkes-Barre, the Wilkes-Barre City Police Department, and officer Charles Casey in his official capacity because these entities are immune under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), (2) that Plaintiffs' section 1983 claim for deprivation of liberty without due process of law against these entities must fail because the Plaintiffs have not pled that the acts or omissions of the police officers were a consequence of a policy or custom of the City of Wilkes-Barre and (3) that Wilkes-Barre City Police Department must be dismissed because it is merely an extension of the City of Wilkes-Barre and not a person subject to suit.  Plaintiffs are inclined only to question the reasoning of the second contention."  (Brief in Opposition to City of Wilkes-Barre Defendants' Motion to Dismiss (Doc. 83) at 8).  At the conclusion of their brief, plaintiffs state that the court "should deny the City Defendant's Motion to Dismiss to the extent that it seeks dismissal with prejudice of Count XIX against the City of Wilkes-Barre."  The court reads these statements to say that plaintiffs do not oppose granting the motion on other grounds.  Therefore the plaintiffs' state-law claims against these defendants will be dismissed and the Wilkes-Barre Police Department will be dismissed from the case.  The sole remaining claim against any of these defendants, therefore, is a Section 1983 claim for deprivation of liberty.

seized by police when she went to the hospital with her daughter.  The claim here is a federal Fourth Amendment claim, as the parties have agreed that plaintiffs cannot prevail on state–law tort claims against the municipality.  As a general matter, "[t]o prevail on [a] false arrest claim, plaintiffs would have to demonstrate at trial that the police lacked probable cause to arrest" them.  Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995).  Thus, a plaintiff must show that an arrest occurred, and that the arrest lacked probable cause.  "Supreme Court decisions provide that a seizure is a show of authority that restrains the liberty of a citizen, or a 'governmental termination of freedom of movement intentionally applied.'"  Gallo v. City of Philadelphia, 161 F.3d 217, 223 (3d Cir. 1998) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 844 (1998)); Berg v. County of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000) ("A person is seized for Fourth Amendment purposes only if he is detained by means intentionally applied to terminate his freedom of movement.").  Similarly, "[a] false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law."  Groman, 47 F.3d at 636.

The court will sustain the plaintiffs' objections and decline to adopt the report and recommendation on this claim.  Cheryl James alleges that "Wright Township Police officers insisted that" she or her husband "travel with Nicole to the hospital." (Complt. at ¶ 54).  She further alleges that she was "compelled by law to do so" based on the statements of police officers.  (Id. at ¶ 55).  These allegations indicate

that police officers asserted their authority and compelled Cheryl James to

accompany her daughter to the hospital.  She alleges that she had no choice in the

matter, and her freedom of movement was thereby intentionally terminated by the

actions of the police.  Likewise, James alleges that she was confined at the direction

of the police in an ambulance and had no means of exiting that confinement.  (Id. at

¶¶ 147-149).  If she can prove these facts to a jury, should could prevail on her

claim.  The plaintiffs may proceed on their Section 1983 false arrest and false

imprisonment claims.

### ii.  Municipal Liability

Plaintiffs likewise object to the magistrate judge's recommendation that their

claims against the City of Wilkes Barre should be dismissed with prejudice because

they have failed to articulate a policy or custom that was the cause of the

constitutional violations they suffered.  They argue that amendment of the complaint

should be allowed, as amendment would not be futile.

Under the standard articulated in Monell v. Dept. of Social Svcs of the City of

New York, 436 U.S. 659 (1978), "local governing bodies . . . can be sued directly

under §1983 . . . where, as here, the action that is alleged to be unconstitutional

implements or executes a policy statement, ordinance, regulation, or decision

officially adopted and promulgated by that body's officers."  Monell, 436 U.S. at 690.

Thus, "[a] public entity . . . may be held liable for the violation of a constitutional right

under 42 U.S.C. § 1983 only when the alleged unconstitutional action executes or

15

implements policy or a decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy."  Reitz v. County of Bucks, 125 F.3d 139, 144 (3d Cir. 1997).  Liability exists when "'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).

Defendants argue that plaintiffs have not pointed to any policy or custom that was the cause of their injuries.  As evidence that a policy or custom existed, plaintiffs point to an incident report prepared in the case which "stat[ed] the officers' reasons for arresting and imprisoning Cheryl James."  (Plaintiffs' Brief in Opposition to Wilkes-Barre Defendants' Motion to Dismiss (Doc. 83) at 9).  The police department, plaintiffs allege, "filed the report without any comment thereupon or any apology to Cheryl James."  (Id.).  This report is "evidence that a custom of involuntarily examining and committing individuals who do not meet the requirements for involuntary examination and commitment under the Mental Health Procedures Act." (Id.).

Plaintiffs allege that "Defendants Wilkes-Barre and Wilkes-Barre City Police, through the Wilkes-Barre Police officers such as Charlie Casey, and with violence upon the person of Cheryl James, forcibly arrested and imprisoned Cheryl James while representing the horrors they exposed her to as being the lawful incidents of a valid 302 arrest."  (Complt. at ¶ 273).  Plaintiffs contend that defendants' actions

"derived [Cheryl James] of her liberty without due process of law." (Id. at ¶ 278).

Defendants subjected James to "an unreasonable search and seizure of [her] person

and imprisonment and torture." (Id. at ¶ 281).  Such conduct violated her

"constitutional rights under the Fourth and Fourteenth Amendments." (Id. at ¶ 282).

The court agrees with the magistrate judge that plaintiffs have not stated a

claim for municipal liability with these allegations.  Plaintiffs do not allege that any

policy or custom caused the deprivation of Cheryl James's rights.  Indeed, plaintiffs

themselves admit that the Wilkes-Barre police "acted through" Officer Casey in

subjecting Cheryl James to false arrest and improper search and seizure.  The

plaintiffs pursue a *respondeat superior* theory of liability against the municipality.

Such claims are unavailable under Section 1983.

The court agrees with the plaintiffs, however, that the count should not be

dismissed with prejudice.  See Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000)

(finding that "it is an abuse of discretion to deny leave to amend unless 'plaintiff's

delay in seeking amendment is undue, made in bad faith, prejudicial to the opposing

party, or [the amendment] fails to cure the jurisdictional defect." (quoting Berkshire

Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 886 (3d Cir. 2000)).  "Leave to

amend may be denied, however, if amendment would be futile." Id.  Plaintiffs could

allege facts that would demonstrate a policy or custom that caused the deprivation of

their rights.  Amendment would not be futile.  The court will therefore grant the

motion to dismiss the claims of municipal liability with leave to re-plead them.

### iii.  Punitive Damages

Plaintiffs also object to the magistrate judge's finding that punitive damages are unavailable in this case against municipalities and officials acting in their official capacities and that there are no state-law claims which would permit punitive damages.  Plaintiffs contend that Counts II and III should not be dismissed, and therefore punitive damages should remain in the case.  Count II is a false arrest claim brought against Wright Township, the Wright Township Police and Michael Miller for false arrest.  Count III is a false imprisonment claim brought against the same defendants.  Both these counts, plaintiffs insist, are brought pursuant to 42 U.S.C. § 1983.

The plaintiffs do not dispute that the state-law claims against these defendants should be dismissed.  They argue, however, that since federal counts remain in the complaint, that punitive damages should be allowed pending discovery.  Federal law provides that "a municipality is immune form punitive damages under 42 U.S.C. § 1983."  Newport v. Fact Concerts, 453 U.S. 247, 271 (1981).  Thus, punitive damages cannot be obtained under these claims against the municipality and the court will adopt the report and recommendation on this point.  No punitive damages may be obtained against the municipality or against any municipal officials acting in their official capacities.

### B.  Second Report and Recommendation

Magistrate Judge Methvin's second report and recommendation  addresses

18

two other motions to dismiss.  The first of these motions was brought by the

Wyoming Valley Health Care System, the Wilkes-Barre General Hospital, Repiratory

Therapist Tanya Ostopick and nurses Amy Craig, Beth Ann Noble, Brian Moran,

Ryan Seltzer, Carole Pirow, Kathy Vidumski and Jason Killian.  ("Hospital

Defendants").  The second motion was brought by Doctors Russell James, Noel

Estioko, Maureen Licthman, and Physicians Assistant Laura Paulukonis ("Physician

Defendants").

The second report and recommendation concluded that the motion to dismiss

should be denied in part and granted in part.  The magistrate judge found that the

motion should be denied with respect to plaintiff's claims brought pursuant to Section

1983 and the Pennsylvania Mental Health Procedures Act ("MHPA"), 50 PENN. STAT.

ANN. § 7302(a)(1).  She also concluded that plaintiffs' claims for negligent infliction of

emotional distress and intentional infliction of emotional distress should be dismissed

without prejudice to re-pleading the count.  Plaintiffs' claims for false imprisonment

and false arrest should not be dismissed, the magistrate judge found.  Likewise, the

court concluded that plaintiffs' assault and battery claims and negligence claims

should not be dismissed.  Finally, the magistrate judge found that plaintiffs' request

for punitive damages should not be dismissed.[4]

---

[4]With the exception of plaintiffs' claims brought pursuant to Section 1983 and the
MHPA, neither party filed objections.  Therefore, in order to decide whether to adopt the
report and recommendation, the court must determine whether a review of the record
evidences plain error or manifest injustice.  See, e.g., Sullivan v. Cuyler, 723 F.2d 1077,
1085 (3d Cir. 1983); FED. R. CIV. P. 72(b) 1983 Advisory Committee Notes ("When no

Both sets of defendants filed objections, which the court will address successively.

### 1. Hospital Defendants

The Hospital Defendants have raised a number of objections to the report and recommendation.  The court will address each in turn.

### i. Failure to Dismiss Section 1983 Claims

The WBGH Defendants contend that the magistrate judge erred in finding that they could be liable under Section 1983.  They insist that they are not state actors and therefore are not covered by the statute.  Instead, they are simply private, individual health-care providers and other private entities.  The corporate entities among these defendants, the Wilkes-Barre Hospital Company and Wyoming Valley Health Care System, also insists that they cannot be vicariously liable for any actions of their employees.

In most Section 1983 cases, conduct by private actors is beyond the scope of constitutional sanction, but "governmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government and, as a result, be subject to constitutional constraints."  Edmonson v. Leesville Concrete Co., 500 U.S. 614, 620 (1991).  Courts apply a two-part test to

timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record to accept the recommendation"); 28 U.S.C. § 636(b)(1).  After careful review, the court finds no clear error and will adopt those portions of the report and recommendation to which no objections were filed.

determine whether a private actor can be subject to such constraints: first, courts ask "whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority."  Id.  Next, they inquire "whether the private party charged with the deprivation could be described in all fairness as a state actor."  Id.

The magistrate judge concluded that plaintiffs alleged they were subject to involuntary mental health examinations performed under Pennsylvania law, and that performing such examinations could arguably be considered state action.  Courts have split over whether physicians and hospitals acting in accord with state law to detain and treat patients engage in state action.  Because of this conflicting authority, the magistrate judge concluded that plaintiffs have stated a claim.  The defendants object to this finding.

The court must address whether the defendants here can be seen as state actors.  First, the plaintiffs, in claiming that they were detained involuntarily for medical treatment absent any procedures, have alleged a violation of a liberty interest without due process and stated a constitutional claim.  Addington v. Texas, 441 U.S. 418, 425 (1979) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.").  The plaintiffs have therefore satisfied the first part of the test by alleging their constitutional rights were violated.

The only remaining question is whether defendants acted under color of state

21

law in detaining plaintiffs.  To determine whether a "private party could in all fairness be regarded as a federal actor," courts may apply any one of three tests: "(I) the 'public function' test, (ii) the 'close nexus' test and (iii) the 'symbiotic relationship' test."  Brown v. Philip Morris, Inc., 250 F.3d 789, 801 (3d Cir. 2001).  "Regardless of what test is ultimately applied, the object of the inquiry is to determine whether a private entity has exercised powers traditionally reserved exclusively to the government."  Id.  A party engages in a "public function" when "the government is effectively using the private entity in question to avoid a constitutional obligation or to engage in activities reserved to the government."  Id. at 801-802.  This test is a "rigorous" inquiry, and "the 'traditionally public function must be the 'exclusive prerogative of the [government].'"  Id. at 802 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004-5 (1982)).   A "close nexus" exists when "the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'"  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 52 (1999) (quoting Blum, 457 U.S. at 1004).  The "'symbiotic relationship test' . . . asks whether the government has 'insinuated itself into a position of interdependence' with the defendant."  Brown, 250 F.3d at 803 (quoting Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961)).

The statute at issue here is Section 302 of the MHPA, which provides for the examination of persons suspected of being "severely mentally disabled and in need of immediate treatment."  50 PENN. STAT. ANN. § 7302(a)(1).  A patient presented for

22

examination pursuant to this statute "shall be examined by a physician within two hours of arrival . . . to determine if the person is severely mentally disabled within the meaning of section 301 and in need of immediate treatment." 50 PENN. STAT. ANN. § 7302(b). "Treatment shall begin immediately" if the patient is deemed severely mentally disabled. Id. Courts in this circuit and district have examined whether the procedures mandated in the MHPA transform physicians into state actors. In Benn v. Universal Health Sys., 371 F.3d 165 (3d Cir. 2004), the Court of Appeals for the Third Circuit examined whether physicians who requested that a patient be examined for involuntary admission were state actors.   After undertaking the various tests outlined above, the court concluded that "persons who petition for the involuntary commitment of others are not state actors." Id. at 173; see also Carver v. Plyer, 115 Fed. Appx. 532, 538-9 (3d Cir. 2004) (even though "the MHPA contains language which states that a mental health professional 'shall' treat an individual if it is determined that emergency treatment is necessary, the actual determination of whether treatment is necessary is sufficiently discretionary so as not to compel any particular action . . . [the doctors were therefore] not compelled by the MHPA to commit and treat [plaintiff] and cannot therefore be considered a state actor in this case."); Janicsko v. Pellman, 774 F. Supp. 331, 339 (M.D. Pa. 1991) ("this court cannot say that the involuntary commitment of the mentally ill by private physicians and hospitals is, under the MHPA, a function compelled by or sufficiently connected to state directives to attribute those actions to the state.").

23

Because authority in this circuit makes clear that a physician or other private actor who follows the involuntary commitment procedures outlined in Section 302 of the MHPA cannot be a state actor, the court will sustain the defendants' objections to this portion of the report and recommendation.  The court will decline to adopt the report and recommendation on this issue and grant the defendants' motion to dismiss this claim.  In addition, the corporate entities' motion on this point will also be granted, since Section 1983 liability cannot obtain against a private actor.

### ii.  Failure to Grant Immunity under the Pennsylvania Mental Health Procedures Act

Defendants also claim that they are immune from any claims premised on the placement of 302 Holds on the plaintiffs under Pennsylvania law.  Plaintiffs have not alleged gross negligence, and the court must therefore dismiss plaintiffs' claims.

"The MHPA gives broad immunity to physicians and others who participate in the involuntary commitment process."  Benn, 371 F.3d at 175.  The statute provides that  "'in the absence of willful misconduct or gross negligence a [person who] participates in a decision that a person be examined or treated under this act . . . shall not be civilly or criminally liable for such decision or for any of its consequences.'"  Id. (quoting 50 PA. STAT. ANN. § 7114(a)).  In Pennsylvania, gross negligence is "'a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference.  The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care.'"

Walsh v. Borczon, 881 A.2d 1, 7 (Pa. Super. Ct. 2005) (quoting Albright v. Abington Memorial Hosp., 696 A.2d 1159, 1164 (Pa. 1997)).  "'Willful misconduct' occurs when 'the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong.'" Benn 371 F.3d at 175-6 (quoting Krivijanski v. Union R. Co., 515 A.2d 933, 937 (Pa. Super. Ct. 1986)).

    The magistrate judge concluded that immunity for the defendants under the MHPA is at this point premature.  Plaintiffs have alleged that defendants did not follow the procedures required by the MHPA, particularly in providing Cheryl James with an assessment within two hours of the request for one, and that some of those sued in tort were not persons authorized by the statute to enjoy this immunity. Plaintiffs allege that by 1:38 A.M. on the day in question "General Hospital medical personnel recognized that there were problems with Cheryl James' risk assessment and that Cheryl James may not have belonged strapped to a gurney in the emergency room" but they continued to detain her.  (Complt. at ¶ 95).  James's hospital records do not indicate any mental health problems, but only that she was angry at mistreatment and smelled of alcohol.  (Id. at ¶ 96).  Plaintiffs also allege that James's medical records are inconsistent, justifying restraint because James had allegedly removed her clothing and tried to run off, even though a notation made one minute later indicates she was clothed.  (Id. at ¶ 98).  James remained strapped to a gurney for four hours, forced to use a bed pan to relieve herself, before a doctor

examined her mental state.  (Id. at ¶ 99-100).

The court will overrule the objections and adopt the report and recommendation on this point.  If plaintiffs can produce evidence to support the claim that Cheryl James was left strapped to a gurney for four hours before being examined, they can show that the medical defendants grossly deviated from the standard of care, since the law requires a patient be seen within two hours. Moreover, the court reads plaintiffs' allegations to be that defendants acted to restrain plaintiff and force her to undergo psychiatric evaluation, even though they knew that she was not suffering from any condition requiring such restraint.  If plaintiff can prove these facts, plaintiff could demonstrate that defendants were "consciously indifferent to the perpetration of a wrong."  Benn, 371 F.3d at 175-76.

### iii.  Failure to Dismiss Punitive Damages Claims

The WBGH Defendants also argue that magistrate judge erred in finding that they could be liable for punitive damages.  The conduct alleged against the individual providers was not outrageous and does qualify for punitive damages, and a health care provider cannot be vicariously liable in punitive damages for the actions of its agents.

In Pennsylvania, "'[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.'"  Hutchinson ex rel. Hutchinson v. Luddy, 870 A. 2d 766, 770 (Pa. 2005) (quoting Feld v. Merriam, 485 A.2d 742, 747 (Pa. 1984)).  Since "punitive

damages are penal in nature," they are available "only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." Id.  In determining whether to award punitive damages, "one must look to 'the act itself together with all the circumstances including the motive of the wrongdoers and the relations between the parties.'" Feld, 485 A.2d at 748.  In Pennsylvania, "[p]unitive damages shall not be awarded against a health care provider who is only vicariously liable for the actions of its agent that caused the injury unless it can be shown by a preponderance of the evidence that the party knew of and allowed the conduct by its agent that resulted in the award of punitive damages."  40 PENN. STAT. ANN. § 1303.505(c).

The court finds that, as summarized above, plaintiffs have made allegations of outrageous conduct sufficient to survive a motion to dismiss.  The court will adopt the report and recommendation on this point.  Plaintiffs allege that the physician defendants recklessly and outrageously allowed plaintiff to be subject to unnecessary and unwanted medical treatment, despite her protests.  Such allegations are sufficient to allow for discovery that examines the motives and results of the defendants' alleged mistreatment.  Likewise, the court will adopt the report and recommendation as it relates to liability in punitive damages for the health-care providers.  As there are allegations of outrageous conduct, the court finds that discovery is necessary to determine whether evidence exists to support claim that the health-care providers knew of and allowed the alleged outrageous conduct to

27

occur.

### iv.  Other Tort Claims

The magistrate judge also found that plaintiffs' claims against these defendants for negligent infliction of emotional distress, intentional infliction of emotional distress and false arrest should be dismissed.  The magistrate judge concluded that plaintiffs' claims for false arrest should be granted with prejudice.   As explained above, the parties do not object to these findings, and the court's task is merely to examine them for plain error or manifest injustice.  Finding none, the court will adopt the report and recommendation on this point.

### 2.  Physician Defendants

The physician defendants likewise raise several objections to the report and recommendation.  The court will address each in turn.

### i.  Allegations Against Dr. Litchman Pursuant to Section 1983

Defendant Maureen Litchman, M.D., argues that the court should find the magistrate judge erred in concluding that Litchman's motion to dismiss as it pertains to plaintiffs' Section 1983 claims against her should be denied.  Litchman claims that Plaintiff Cheryl James did not allege that Litchman violated her constitutional rights by illegally detaining her or otherwise mistreating her.  Instead, the allegations against the defendant amount only to negligence, which cannot give rise to a Fourth Amendment claim or a due process claim.

The court will sustain the defendant's objections on this matter.  As explained

28

above, a physician following the involuntary commitment procedures in the MPHA is not a state actor and therefore cannot be liable under section 1983. The court will grant Defendant Litchman's motion on this claim.

### ii. Claims Against Other Physicians

All of the physician defendants claim that the magistrate judge erred in not dismissing the federal claims against them brought pursuant to 42 U.S.C. § 1983. The physicians claim that they were not state actors in this instance and therefore cannot be liable under the statute.

For the reasons stated above, the court will decline to adopt the report and recommendation on this point and grant the physician defendant's motion to dismiss the Section 1983 claims against them.

### iii. Allegations Brought Pursuant to the MHPA

The defendant physicians, including Defendant Litchman, argue that the magistrate judge erred in not recommending dismissal of the negligence counts against them brought pursuant to the Pennsylvania Mental Health Procedures Act ("MHPA"). They contend that they are immune from liability under the MHPA, which provides immunity from negligence claims to doctors treating mentally ill patients under certain conditions. A physician can be liable under this statute only for intentional acts or gross negligence, and plaintiffs have alleged mere negligence.

For the reasons stated above in reference to the hospital defendants, the court will overrule the physician defendants' objections and adopt the report and

recommendation on this point.

### iv.  Punitive Damages Claims

The medical defendants likewise contend that, since all of the claims against them should be dismissed, punitive damages are unavailable.  The court erred in finding that plaintiffs could obtain punitive damages against them, and thus claims for such damages should be dismissed.  For the reasons explained above in reference to the hospital defendants, the court finds that plaintiffs have made sufficient allegations of outrageous conduct to survive a motion to dismiss on this claim.  The court will overrule the defendants' objections and adopt the report and recommendation on this point.

### v.  Other Tort Claims

As explained above, no objections were filed to the magistrate judge's report and recommendation on some of plaintiffs' tort claims.  For the same reasons, the court will adopt the report and recommendation on this point.

## Conclusion

For the reasons stated above, the court will sustain the parties' objections to the reports and recommendations in part and overrule them in part.  The court will adopt the reports and recommendations in part and decline to adopt them in part. Remaining in the case will be the plaintiffs' Section 1983 claims for false arrest and imprisonment against officer Michael Marshall and the plaintiffs' MHPA claims against the hospital and physician defendants.  The court will also dismiss plaintiffs'

claims against the municipal defendants brought pursuant to Section 1983 without prejudice to plaintiffs re-pleading the claim and sufficiently alleging a municipal policy or custom that caused their injuries.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHERYL JAMES;** | : | **No. 3:10cv1534** |
| **WARREN JAMES; and** | : | |
| **NICOLE JAMES,** | : | **(Judge Munley)** |
|        **Plaintiffs** | : | |
| | : | |
|    **v.** | : | |
| | : | |
| **THE CITY OF WILKES-BARRE;** | : | |
| **WRIGHT TOWNSHIP;** | : | |
| **WILKES-BARRE HOSPITAL** | : | |
| **COMPANY, LLC, d/ba Wilkes-Barre** | : | |
| **General Hospital;** | : | |
| **THE WYOMING VALLEY HEALTH** | : | |
| **CARE SYSTEM;** | : | |
| **THE WILKES-BARRE CITY POLICE** | : | |
| **DEPARTMENT;** | : | |
| **THE WRIGHT TOWNSHIP POLICE** | : | |
| **DEPARTMENT;** | : | |
| **DR. RUSSELL ELMER JAMES;** | : | |
| **DR. NOEL PACLEB ESTIOKO;** | : | |
| **AMY LYNN CRAIG;** | : | |
| **BETH ANN NOBLE;** | : | |
| **LORA DENISE PAULUKONIS;** | : | |
| **BRIAN THOMAS MORAN;** | : | |
| **TANYA LYNN OSTOPICK;** | : | |
| **RYAN RUSSELL SELTZER;** | : | |
| **CAROLE FLEMING PIROW;** | : | |
| **DENNIS MONK;** | : | |
| **BRIAN STOUT;** | : | |
| **MICHAEL MARSHALL;** | : | |
| **CHARLIE CASEY;** | : | |
| **KATHY PICKARSKI VIDUMSKI;** | : | |
| **JASON FRANK KILLIAN; and** | : | |
| **DR. MAUREEN M. LICTCHMAN** | : | |
|        **Defendants** | : | |

32

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### ORDER

**AND NOW,** to wit, this 15th day of August 2011, the plaintiffs' objections (Doc.

112) and the defendants' (Docs. 116, 118) objections to the reports and

recommendations (Docs. 109-110) of Magistrate Judge Mildred E. Methvin are

hereby **SUSTAINED IN PART** and **OVERRULED IN PART**.  The reports and

recommendations are hereby **ADOPTED IN PART**, as follows:

1.  The motion to dismiss of the Wright Township, Wright Township Police

Department, and Michael Marshall (Doc. 63) is hereby **GRANTED** in part and

**DENIED** in part, as follows:

a.  The motion is **DENIED** with respect to plaintiffs' Fourth Amendment

claims for false arrest and false imprisonment brought pursuant to 28

U.S.C. § 1983;

b.  The motion is **GRANTED** without prejudice with respect to plaintiffs'

claims for municipal liability brought pursuant to 28 U.S.C. § 1983; and

c.  The motion is **GRANTED** with prejudice in all other respects;

2.  The motion to dismiss of the City of Wilkes-Barre and the Wilkes-Barre

Police Department (Doc. 67) is hereby **GRANTED IN PART** and **DENIED IN**

**PART**, as follows:

a.  The motion is **DENIED** with respect to plaintiffs' Fourth Amendment

claims for false arrest and false imprisonment brought pursuant to 28

U.S.C. § 1983;

b.  The motion is **GRANTED** without prejudice with respect to plaintiffs' claims for municipal liability brought pursuant to 28 U.S.C. § 1983; and

c.  The motion is **GRANTED** in all other respects;

3.  The motion to dismiss of the Wyoming Valley Health Care System, Wilkes-Barre Hospital Company, Amy Craig, Beth Ann Noble, Brian Moran, Tanya Ostopick, Russell Seltzer, Carole Pirow, Kathy Vidumski and Jason Killian (Doc. 68), is hereby **GRANTED IN PART** and **DENIED IN PART**, as follows:

a.  The motion is **GRANTED** with respect to plaintiffs' claim brought pursuant to 42 U.S.C. § 1983 against these defendants;

b.  The motion is **GRANTED** with respect to plaintiffs' claim brought for violations of the Pennsylvania Mental Health Procedures Act;

c.  The motion is **GRANTED** without prejudice  with respect to plaintiffs' claims for negligent infliction of emotional distress and intentional infliction of emotional distress;

d.  The motion is **GRANTED** with prejudice with respect to plaintiffs' false imprisonment claims; and

e.  The motion is **DENIED** in all other respects; and

4.  The motion to dismiss of Russell James, Noel Estioko, Lora Paulukonis, and Maureen Litchman (Doc. 79) is hereby **GRANTED IN PART** and **DENIED IN PART**, as follows:

a.  The motion is **GRANTED** with respect to plaintiff's claim brought

pursuant to 42 U.S.C. § 1983 against these defendants;

b.  The motion is **GRANTED** with respect to plaintiff's claim brought for

violations of the Pennsylvania Mental Health Procedures Act;

c.  The motion is **GRANTED** without prejudice  with respect to plaintiffs'

claims for negligent infliction of emotional distress and intentional

infliction of emotional distress;

d.  The motion is **GRANTED** with prejudice with respect to plaintiffs'

false imprisonment claims; and

e.  The motion is **DENIED** in all other respects.


**BY THE COURT:**


**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**UNITED STATES DISTRICT COURT**