IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHERYL JAMES, | : | No. 3:10cv1534 |
| WARREN JAMES and | : | |
| NICOLE JAMES, | : | (Judge Munley) |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| THE CITY OF WILKES-BARRE; | : | |
| WRIGHT TOWNSHIP; | : | |
| WILKES-BARRE HOSPITAL | : | |
| COMPANY, LLC, d/ba Wilkes-Barre | : | |
| General Hospital; | : | |
| THE WYOMING VALLEY HEALTH | : | |
| CARE SYSTEM; | : | |
| THE WILKES-BARRE CITY POLICE | : | |
| DEPARTMENT; | : | |
| THE WRIGHT TOWNSHIP POLICE | : | |
| DEPARTMENT; | : | |
| DR. RUSSELL ELMER JAMES; | : | |
| DR. NOEL PACLEB ESTIOKO; | : | |
| AMY LYNN CRAIG; | : | |
| BETH ANN NOBLE; | : | |
| LORA DENISE PAULUKONIS; | : | |
| BRIAN THOMAS MORAN; | : | |
| TANYA LYNN OSTOPICK; | : | |
| RYAN RUSSELL SELTZER; | : | |
| CAROLE FLEMING PIROW; | : | |
| DENNIS MONK; | : | |
| BRIAN STOUT; | : | |
| MICHAEL MARSHALL; | : | |
| CHARLIE CASEY; | : | |
| KATHY PICKARSKI VIDUMSKI; | : | |
| JASON FRANK KILLIAN; and | : | |
| DR. MAUREEN M. LICTCHMAN, | : | |
| Defendants | : | |

## **MEMORANDUM**

Before the court for disposition is the issue of whether Defendant Michael Marshall should be dismissed from this case on the basis of qualified immunity. For the following reasons, we find that he should not be so dismissed.

## Background

The facts pertinent to Defendant Marshall's qualified immunity claim

are as follows: On September 28, Plaintiff Nicole James, then fifteen years old, sent text messages from her mobile telephone to a friend informing that friend that James intended to commit suicide by taking an overdose of seventeen ibuprofen pills. (Complaint, Exh. 1 to Notice of Removal (Doc. 1) (hereinafter "Compl.") at ¶ 38). At 10:46 p.m., the Defendant Wright Township Police received a phone call informing them of the threatened suicide. (Id. at ¶ 39).

     At the time of this phone call, Plaintiff Warren James, father of Nicole, was sleeping. (Id. at ¶ 40). Shortly before, he had taken heart medication, which made him extremely tired and sleepy. (Id. at ¶¶ 40, 12). Plaintiff Cheryl James, Nicole's mother, had also taken prescription medicine that evening. (Id. at ¶ 42). Like her husband, the prescription medication made Cheryl James tired and sleepy, and she was "unable to stay awake shortly after taking it." (Id. at ¶ 11). She also drank some alcohol on the night in question. (Id. at ¶ 43). All three members of the James family were in the basement of their home, either sleeping or watching television, at the time of the incident in question. (Id. at ¶ 41).

     Wright Township Police officers Dennis Monk, Brian Stout and Michael Marshall arrived at the James home accompanied by emergency medical personnel at 10:49. (Id. at ¶¶ 44-45). They informed Cheryl James of Nicole's threats. (Id. at ¶ 44). The officers' noisy arrival awoke Warren James, and he and his wife spoke to the police. (Id. at ¶ 46). Warren and Cheryl James confronted their daughter about the ibuprofen and text message she had sent her friend. (Id. at ¶ 47). Nicole informed them that she had sent a text and had planned to kill herself, but she reconsidered and had not taken any of the pills. (Id.) Though Nicole

James's parents believed her denials, the Wright Township police officers insisted that she be taken to the emergency room at Defendant Wilkes-Barre General Hospital ("the Hospital").  (Id. at ¶ 48).  Warren and Cheryl James disagreed, wanting to handle the matter in their own home.  (Id. at ¶ 49).  The police officers then informed Warren and Cheryl James that they would charge the couple with "assisted manslaughter" if Nicole suffered an injury due to their actions.  (Id. at ¶ 50).  They felt compelled by the officers to give permission to have Nicole taken to the hospital.  (Id. at ¶ 51).

The police also informed the Warren and Cheryl James that they would need to accompany Nicole to the hospital.  (Id. at ¶ 52).  Still feeling disoriented from their medication, neither parent felt it safe for them to travel.  (Id. at ¶ 53).  They informed the police officers of their fears.  (Id.). The officers nonetheless insisted that at least one parent travel with Nicole James to the hospital.  (Id. at ¶ 54).  Cheryl James judging herself more capable and feeling compelled by the law, agreed to accompany her to the hospital.  (Id. at ¶ 55).

Plaintiff's complaint proceeds to assert many more facts, but these are the facts pertinent to the claim against Defendant Marshall.   The plaintiffs assert that Defendant Marshall's actions amounted to the false arrest and false imprisonment of Plaintiff Cheryl James.

Defendant Marshall filed a motion to dismiss these claims.   The court referred the motion to Magistrate Judge Mildred E. Methvin for the issuance of a report and recommendation.  Judge Methvin recommended the dismissal of the claims against Defendant Marshall.  (Doc. 109). Plaintiffs filed objections to the report and recommendation.  (Doc. 112). Defendant Marshall opposed the objections asserting both that the

plaintiffs had failed to allege any valid claim against him and that even if they had, qualified immunity shielded him from liability. (Doc. 114, Br. in Opp'n to Objections at 14-17). On August 15, 2011, the court issued a memorandum and order which granted plaintiffs' objections in part. The court denied the motion to dismiss plaintiffs' Fourth Amendment claims for false arrest and false imprisonment brought pursuant to 28 U.S.C. § 1983. (Doc. 129, Mem. & Order dated Aug. 15, 2011 at 33). Our memorandum, however, did not address the issue of qualified immunity.

Defendant Michael Marshall appealed this court's decision denying him qualified immunity although our opinion did not explicitly address this issue. (Doc. 130, Notice of Appeal). Noting this court's silence on the qualified immunity issue, the Third Circuit Court of Appeals remanded the case "for the limited purpose of providing a statement of [the court's] reasons for denying qualified immunity to [Defendant Marshall]." (Doc. 138, Order of the Third Circuit Court of Appeals dated Feb. 7, 2012). The court further noted "that the disposition of a motion in which a party pleads qualified immunity must include, at a minimum, an identification of relevant factual issues and an analysis of the law that justifies the ruling with respect to those issues." (Id.) This memorandum and order follows.[1]

**Discussion**

Qualified immunity for police officers "absolves defendants if reasonable officers could have believed their conduct was lawful 'in light of clearly established law and the information the searching officers

---

[1] The Clerk of Court reassigned this case to District Court Judge Robert Mariani on November 14, 2011. On February 7, 2012, Judge Mariani transferred the case back for disposition of this issue.

4

possessed.'" Karnes v. Skrutski, 62 F.3d 485, 491 (3d Cir. 1995) (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)).  Determining whether qualified immunity applies is a two "step process:" "[f]irst, we must determine whether the defendants violated 'clearly established' rights . . . [s]econd, we determine whether a reasonable officer would have believed that his or her conduct deprived plaintiff of his or her constitutional rights." Harvey v. Plains Twp. Police Dept., 421 F.3d 185, 192 (3d Cir. 2005).

In other words:

> Qualified immunity insulates from civil liability government officials performing discretionary functions insofar as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. In assessing a claim of qualified immunity, we must review the law relevant to the official's behavior and ask whether the official could have believed that his or her actions were justified by law. The second part of this inquiry contains two components. To overcome the defense of qualified immunity, (1) the facts, taken in the light most favorable to the party asserting the injury, must show the officer's conduct violated a constitutional right and (2) the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

Forbers v. Twp. of Lower Merion, 313 F.3d 144, 148 (3d Cir. 2002).

In this case, Plaintiff Cheryl James asserts that Defendant Marshall violated her rights by insisting that Defendant Nicole James be taken to the hospital against her parents' wishes and requiring that a parent go with her.  Our memorandum of August 15, 2011, concluded that the complaint alleged that the police officers

> asserted their authority and compelled Cheryl James to accompany her daughter to the hospital. She alleges that she had no choice in the matter, and her freedom of movement was thereby intentionally terminated by the actions of the police.

5

> Likewise, James alleges that she was confined at the direction of the police in an ambulance and no means of exiting that confinement. If she can prove these facts to a jury, [she] could prevail on her claim.

(Doc. 129, Mem. & Order dated Aug. 15, 2011 at 15). These facts underlie her false arrest and false imprisonment claims which in turn are based on plaintiff's Fourth Amendment rights. The first step of the qualified immunity test is met, that is the defendant is alleged to have violated plaintiff's Fourth Amendment rights.[2]

The next portion of the analysis is to determine whether a reasonable police officer would have known that his actions violated plaintiff's rights. "Qualified immunity is defeated if an official 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury.'" Forbes, 313 F.3d at 149 (quoting Wood v. Strickland, 420 U.S. 308, 322 (1975)). The United States Supreme Court has explained as follows: "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, - - U.S. - - , 131 S.Ct. 2074, 2083 (2011) (internal quotation marks and citations omitted). Here a reasonable police officer would have known

---

[2] A more thorough examination whether Plaintiff Cheryl James asserted a valid constitutional claim is provided in our Memorandum and Order of Aug. 15, 2011 at 13-15.

that it violates the Constitution to use his authority as a police officer to force someone to go somewhere they do not wish to go when that person has no legal obligation to do so.³

Defendant argues that he acted as he did to ensure the well being of a distraught teenager and that nothing indicates that it would be clear to a reasonable officer that such conduct could violate the parent's constitutional rights.   Regardless of his motives, however, a reasonable police officer should have known that he cannot use his police authority to force unwanted action upon someone.  Moreover, perhaps recognizing that it would be have been clear to a reasonable officer that it was a violation of a constitutional right to force Plaintiff Cheryl James to go to the hospital, defendant construes James's actions as "voluntary" rather than forced. (Doc. 114, Def. Br. in Supp. of Objections at 16-17) ("Mrs. James then voluntarily agreed to go with her daughter.")

At the motion to dismiss stage, however, we take the plaintiff's version of the facts as true.  <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that in deciding a motion to dismiss, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff.)  The complaint alleges that the police insisted that one of the parents accompany the daughter to the hospital.  Plaintiff Cheryl James believed herself "compelled by law" to accompany her daughter "in reliance upon the statements of the Wright Township Police officers."  (Compl. at ¶ 55).

---

³Defendant does not argue that the parents had a legal obligation to accompany their fifteen year old daughter to the hospital.

Ultimately, depending on what is revealed during discovery, it may well be a jury question whether Defendant Marshall forced plaintiff to leave her home or whether he merely convinced her to go voluntarily.   At this stage of the proceedings, however, taking plaintiff's version of the facts as true we find that the application of qualified immunity to shield Defendant Marshall from liability is inappropriate.

For these reasons, Defendant James Marshall's claim of qualified immunity were denied.

**Date: Feb. 9, 2012**                                          **BY THE COURT:**

**s/ James M. Munley**

**JUDGE JAMES M. MUNLEY**
**United States District Court**